**Richard RADEL, et al., Appellants,**

v.

**BLOOM LAKE FARMS,**
et al., Respondents.

No. C3–96–198.

Court of Appeals of Minnesota.

Sept. 10, 1996.

Review Denied Oct. 29, 1996.

William D. Mahler, Rochester, for Appellants.

James J. Galman, Nathan W. Hart, Jardine, Logan & O'Brien, P.L.L.P., St. Paul, for Respondents.

Considered and decided by KLAPHAKE, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellant dairy farmers sued respondent Minnesota Holstein–Friesian Breeders Association for negligent performance of brokerage services and on various other claims of negligence and fraud. The negligent brokerage claim was dismissed by directed verdict and the jury apportioned no fault to the Association on the remaining claims. Appellants challenge the denial of their motion for a new trial against the Association alone. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

Appellants Richard and Cathy Radel, long-time beef and swine farmers, decided to convert their business to a dairy operation. They wanted help in locating a dairy herd, so they contacted Jim Kraus, a "Holstein Association Consultant" for respondent Minnesota Holstein–Friesian Breeders Association, Inc. (the Association). The Association brings together buyers and sellers of dairy cattle and, in exchange, routinely charges the sellers a commission.

Appellants claim that they bought a herd from Duane Bloom based on Kraus's representations as to the herd's suitability and his verification of the herd's production records. Because the herd's actual milk production failed to meet appellants' expectations, they brought this lawsuit against the Association, Bloom, and Bloom Lake Farms, Inc. Appel-

lants' claims against the Association are based on Kraus's failure to advise them properly, including his failure to review the most recent milk production records so he could alert them that the herd's milk production was declining.

At trial, appellants made claims against the Association for intentional fraud, negligent misrepresentation, negligent brokerage services, and violations of the Consumer Fraud Act. The court granted the Association's motion for a directed verdict on the negligent brokerage claim. As to the remaining claims, the jury found Bloom Lake Farms six percent at fault, the herdsman (a third-party defendant who was dismissed at the close of evidence) 34 percent at fault, and appellants 60 percent at fault. Because of the directed verdict, the special verdict form was so designed as to effectively preclude a finding of Association negligence.

Appellants brought a motion for a new trial against the Association alone on the claims of negligence, misrepresentation, and damages. After that motion was denied, they brought this appeal.

## ISSUES

I. Did the trial court err in granting the Association's motion for a directed verdict on appellants' negligent brokerage claim?

II. Did the trial court err by including a question about the negligence of a dismissed third-party defendant, the herdsman, on the special verdict form?

III. Did the trial court err by limiting appellants' damages on the misrepresentation claim to out-of-pocket expenses?

## ANALYSIS

### I.

█ When reviewing a directed verdict, this court determines whether, as a matter of law, there was sufficient evidence to present a fact question to the jury. *Nemanic v. Gopher Heating & Sheet Metal,* 337 N.W.2d 667, 669 (Minn.1983).

█ The trial court directed a verdict on the negligent brokerage claim against the Association based on appellants' failure to show (presumably through other cattle brokers) the requisite standard of care for the "broker" industry. We hold that this was error.

Expert testimony is not always necessary to establish negligence. The test of whether expert testimony is required is whether "the matter to be dealt with is so esoteric that jurors of common knowledge and experience cannot form a valid judgment as to whether the conduct of the parties was reasonable."

*Roettger v. United Hosps. of St. Paul,* 380 N.W.2d 856, 860 (Minn.App.1986) (quoting *Butler v. Acme Mkts.,* 89 N.J. 270, 445 A.2d 1141, 1147 (1982)) (citation omitted).

█ The jury question here was whether Kraus was negligent in advising appellants, particularly by not reviewing the most current milk production records. This matter was not too esoteric for the jurors to form their own conclusions about whether Kraus's conduct was reasonable, based on their common knowledge and the testimony of the director of the Minnesota Dairy Herd Improvement Association, a professor of veterinary medicine at the University of Minnesota, a veterinarian, and an agricultural economist. Even if other cattle brokers had testified as to what the industry practice was in giving advice and examining records, that testimony would not necessarily have been dispositive. *See Kalsbeck v. Westview Clinic, P.A.,* 375 N.W.2d 861, 868 (Minn.App. 1985) ("observance of a custom or failure to observe it does not necessarily amount to due care or the lack of it"), *review denied* (Minn. Dec. 30, 1985).

█ There was another underlying factual question here that should have precluded a directed verdict; that is, whether Kraus was acting as *appellants'*, rather than the sellers', broker. *See Vacura v. Haar's Equip., Inc.,* 364 N.W.2d 387, 391 (Minn.1985) ("existence of an agency relationship is a question of fact"). In addition to Kraus's apparent concession that he was working for both the buyer and the seller, there were numerous other facts suggesting an agency relationship that would establish Kraus's duty to appellants. For example: (1) the Association

holds itself out through newsletters and advertisements as being organized, and having the expertise and experience, to broker dairy cattle on behalf of both sellers and buyers; (2) Kraus testified that he knew appellants were inexperienced in purchasing dairy cattle and were relying on him to find a suitable herd; (3) Kraus represented to appellants that he had significant experience in assessing the quality of Holstein cows and had been involved in numerous transactions involving such animals, and that many of his customers did not even look at the cattle he had selected before delivery; (4) Kraus told appellants that he knew of a healthy, good-quality dairy herd with good milk production that might suit their needs; (5) Kraus told appellants that he had inspected the herd and had reviewed its milk production records to verify that it was healthy and of good quality; (6) Kraus gave his opinion as to what cows should be culled out of the herd and negotiated a lower price on some of them; (7) Kraus monitored the herd's dehorning; (8) after the herd was delivered in poor condition, Kraus allegedly dissuaded appellants from cancelling the contract; and (9) appellants testified that they were led to expect that the Association was going to find a suitable herd for them and to believe that Kraus would represent them in the transaction.

Because the court, in the face of this evidence, erroneously directed the verdict, a new trial is warranted.

## II.

■ Appellants ask that the herdsman's name be removed from the special verdict form on retrial. They claim that including him on the initial special verdict form was error because the third-party action against him had been dismissed at the close of the evidence. But in allotting negligence, "a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they [are] parties to the lawsuit." *Lines v. Ryan,* 272 N.W.2d 896, 902–03 (Minn.1978) (quoting *Connar v. West Shore Equip. of Milwaukee,* 68 Wis.2d 42, 227 N.W.2d 660, 662 (1975)). The court not only had a reasonable basis for including the herdsman on the form, it was required to do so.

## III.

Appellants claim that the trial court erred by limiting their damages on the misrepresentation claim to "out-of-pocket" expenses. On retrial, they want damages to be based on the "benefit of the bargain" measure.

■ Minnesota generally adheres to the out-of-pocket damages rule in actions for misrepresentation. *Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 199, 235 N.W.2d 831, 835 (1975). This rule "works best in a transactional context" where the purchaser, in buying property, relies on the seller's fraudulent misrepresentation. *B.F. Goodrich Co. v. Mesabi Tire Co.,* 430 N.W.2d 180, 183 (Minn.1988). It does not work as well when a plaintiff is "led to believe by the misrepresentation that it had something it did not have." *Id.* When such a situation is presented, the plaintiff is entitled to recover its economic loss, "measured by the value of the business before the misrepresentation * * * and the value after." *Id.*

■ In this case, appellants had no dairy cattle business before the alleged misrepresentations; they were beef and swine farmers. Unlike other cases where courts have used an exception to the out-of-pocket rule to restore a business to its former economic status, the business here was not established before the alleged misrepresentation. *See, e.g., Brooks v. Doherty, Rumble & Butler,* 481 N.W.2d 120, 129 (Minn.App.1992) (attorney, whose established "business" was his "legal career," was excepted from strict out-of-pocket rule in recovering damages), *review denied* (Minn. Apr. 29, 1992); *Sports Page, Inc. v. First Union Management,* 438 N.W.2d 428, 433 (Minn.App.1989) (established store was excepted from strict out-of-pocket rule where it was led to believe it would not have to compete for mall's customers and where it became bankrupt due to misrepresentations). Thus, because appellants do not fit the exception to the out-of-pocket rule, the court was correct in applying the rule and should do so again on retrial.

## DECISION

The trial judge improperly granted the motion for a directed verdict on appellants' negligence brokerage claim. It did not, however, err by including the herdsman's name on the special verdict form or by limiting the damages for the misrepresentation claim to out-of-pocket expenses.

**Affirmed in part, reversed in part, and remanded for a new trial.**