**TOWER INSURANCE COMPANY, INC., Appellant,**

v.

**MINNESOTA HOLSTEIN–FREISAN BREEDERS' ASSOCIATION, Respondent,**

**Bloom Lake Farms Incorporated, et al., Defendants,**

**Richard Radel, et al., Respondents.**

**No. C2–99–1003.**

Court of Appeals of Minnesota.

Feb. 22, 2000.

Mark M. Nolan, Stapleton, Nolan, Hynes & McCloughan, P.A., St. Paul, for appellant.

Michael D. LaFountaine, Quinlivan & Hughes, P.A., St. Cloud, for respondent Minnesota Holstein–Freisan Breeders' Association.

William D. Mahler, Mahler Law Office, Rochester, for respondents Richard and Kathy Radel.

Considered and decided by DAVIES, Presiding Judge, CRIPPEN, Judge, and SCHUMACHER, Judge.

## OPINION

DAVIES, Judge

Appellant insurance company challenges a judgment requiring it to indemnify its insured for a liability arising from the insured's negligent brokering services. We reverse.

## FACTS

Richard and Cathy Radel sought from respondent, the Minnesota Holstein–Freisan Breeders' Association (the Association), assistance in locating a dairy herd suitable for purchase. The Association routinely brings together buyers and sellers of dairy cattle, charging a commission for its services. In September 1992, an agent of the Association recommended to the Radels that they purchase a dairy herd from Bloom Lake Farms, Inc. But when the Radels took possession of the herd, the animals were so severely stressed that many soon died or had to be destroyed. The Radels eventually prevailed in an action against the Association for having provided them negligent advice. *Radel v. Minnesota Holstein–Friesian Breeders Ass'n, Inc.*, No. C8–97–2202, 1998 WL

436908 (Minn.App. Aug.4, 1998), *review denied* (Minn. Sept. 30, 1998).[1]

At the time the Association advised the Radels to purchase the herd, appellant Tower Insurance Company (Tower) insured the Association under a standard comprehensive general liability policy (CGL). Tower defended the Association in the Radel action, but under a reservation of rights. After the Radels prevailed, Tower brought this action, seeking a declaration that its policy did not cover the Association's liability for providing negligent brokerage services. After the district court denied cross-motions for summary judgment, the parties stipulated that no factual disputes remained for trial, and the district court entered a judgment declaring that Tower must indemnify the Association.

In this appeal, Tower challenges the court's determinations, claiming: (1) there was no "property damage" or "occurrence," which are predicates to liability under its CGL policy; and (2) the business-risk exclusions of the policy preclude coverage for the loss.

Tower also claims that the Association is collaterally estopped from claiming coverage under the Tower policy based on a 1995 lawsuit in which the Association was named as a defendant. *See North Branch Mut. Ins. Co. v. Bloom Lake Farms, Inc.,* No. C9–95–762, 1995 WL 553875 (Minn. App. Sept. 19, 1995) (holding North Branch Mutual not required to indemnify its insured, Bloom Lake Farms (the seller), for claim based on seller's misrepresentation).

### ISSUES

I. Were the losses involved in the Radels' action "property damage" within the terms of the insurance policy?

1. This court had earlier reversed the district court's summary-judgment denial of the Radels' negligent-brokerage claim; we remanded for trial, noting numerous facts in the record suggesting that there existed between

II. Do the policy's insuring clause and business-risk exclusion relieve the insurer from liability for this loss?

III. Is the Association collaterally estopped from claiming coverage under the Tower policy?

### ANALYSIS

█ The facts are largely undisputed; the issue on appeal is whether the district court erred in its application of the law to the facts. A reviewing court need not defer to the trial court's application of the law when the material facts are not in dispute. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989). The interpretation of an insurance policy is a question of law, which an appellate court reviews de novo. *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn. 1992). To effect the intent of the parties, the language of the policy must be given its ordinary and usual meaning. *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977).

### I.

█ The insurance policy provides:

We will pay those sums that the insured becomes *legally obligated to pay as damages* because of * * * "property damage" * * *.

* * * *

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property * * *.

(Emphasis added.)

█ On appeal, Tower asserts that it is not obligated to indemnify the Association

the Association and the Radels an agency relationship that could give rise to liability. *Radel v. Bloom Lake Farms,* 553 N.W.2d 109, 111–12 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996).

because the Association did not cause "property damage" giving rise to the Association's liability.

There is no dispute that the dairy herd was "damaged," but there is no allegation or proof that this "damage" was traceable to the insured. The loss suffered by the Radels was a result of their purchase of diseased cattle, cattle that were never under the control of the Association. The Association's liability arose from negligently recommending the purchase of an already-damaged dairy herd, not from causing the "property damage." The Association did not cause the cows' illness or stress; rather, the Association was found liable for advising purchase of the herd after negligently failing to investigate its condition. This liability does not constitute "physical injury to tangible property."

## II.

■■■ Tower also asserts that it is exempted from coverage under the business-risk exclusions in its policy. We find it necessary in addressing this issue to consider the insuring clause along with the business-risk exclusion issue.

Under a CGL policy,

[t]he risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of

**2.** Cases arising under these clauses normally involve an insured who is in the business of producing a product, not providing advice. The business-risk exclusion is therefore written explicitly to negate insurer liability in circumstances where the insured's "product" is unsuitable or defective. But, for obvious reasons, insurers are reluctant to underwrite the risk that the insured will not fulfill its contractual obligations. Therefore, the exclusion is designed to bar coverage unless the product defect causes either damage to *other*

goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. * * * This liability, however, is not what [comprehensive general liability insurance is] designed to protect against.

*Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co. of Am.*, 323 N.W.2d 58, 63 (Minn.1982) (quoting Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 441 (1971)).

The district court erred in its analysis of the CGL policy coverage. The damages arose because the Association failed to provide work (advice) of the quality it contracted to provide. Although the claim is categorized as "negligent misrepresentation," it is nothing more than the Association failing to fulfill its contractual obligation to render sound advice to its client, a buyer of dairy cattle. Failure of the insured to provide the services contemplated in the brokerage contract is not a risk covered by a CGL policy. *Id.*

■■■ The business-risk exceptions in the Tower CGL policy—exceptions more or less typical in such policies—bolster our conclusion that the policy does not provide coverage for the claims made by the Radels. Tower was not liable for defective performance. The district court erred in concluding that Tower must indemnify the Association.[2,3]

property or personal injury; only then does the insurer assume the risk. We concede that an insured that provides advisory services as its "product" does not fit neatly within the exclusionary language of this or other CGL policies, but such an insured fits there nonetheless.

**3.** The rationale underlying the doctrine of reasonable expectations also supports this outcome. Under that doctrine—which must be applied evenhandedly, to protect insurers

## III.

Tower does not prevail on its final argument on appeal: that the Association is collaterally estopped by virtue of the lawsuit that led to this court's decision in *North Branch*, 1995 WL 553875, at *1– *3. Although the Association was a named party in *North Branch*, Tower's liability was not determined, or even put at issue. In *North Branch*, Bloom Lake Farms was the seller, and the Association was the broker; thus, their respective roles in the transaction, and their insurance policies, were different.

The claim in the present dispute is limited to negligent brokering services, whereas the *North Branch* suit involved claims of seller misrepresentation and breach of warranty. Tower has failed to show that the issue here was adjudicated in *North Branch*, or that the Association was in privity with any party whose rights were adjudicated in that suit. *See Brunsoman v. Seltz*, 414 N.W.2d 547, 550 (Minn.App. 1987) ("Privity exists where the record demonstrates controlling participation and active self-interest in the litigation" and requires that the estopped party's interests were represented sufficiently in the prior action that application of collateral estoppel is not inequitable), *review denied* (Minn. Jan. 15, 1988).

The district court did not err in rejecting Tower's collateral-estoppel argument.

Because of our decision on the other issues, it is not necessary to reach Tower's argument that there was no "occurrence" as required by the policy and we decline to reach that issue.

## DECISION

Because providing negligent brokerage services did not cause "property damage," appellant insurer has no duty to indemnify respondent Association for the liability it incurred as a result of that negligence. In addition, the insuring clause and business-risk exclusions of the CGL policy together relieve the insurer of any obligation to indemnify its insured for claims arising from the insured's negligent brokerage services. Collateral estoppel does not apply.

**Reversed.**

---

as well as insureds—the expectations of coverage must be considered reasonable under the circumstances. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 278 (Minn.1985); *Walker v. State Farm Fire & Cas. Co.*, 569 N.W.2d 542, 545 (Minn.App. 1997), *review denied* (Minn. Dec. 22, 1997). The doctrine permits a court to construe an insurance policy according to "real-life situations" rather than "arbitrary rules." *Reinsurance Ass'n of Minnesota v. Johannessen*, 516 N.W.2d 562, 566 (Minn.App.1994) (Davies, J.,

dissenting) (quoting *Atwater*, 366 N.W.2d at 278), *review denied* (Minn. Aug. 24.1994). An insurer issuing a CGL policy has no reasonable expectation that its insured will receive protection for negligent performance of a contract unless the defective performance causes personal injury or damage to other property. The insurance marketplace presumes that the risk of non- or mis-performance, when there is no damage to other property, is properly insured under an errors-and-omissions policy, not a CGL policy.