**REMODELING DIMENSIONS, INC., Respondent,**

v.

**INTEGRITY MUTUAL INSURANCE COMPANY, Appellant.**

No. A10–1992.

Court of Appeals of Minnesota.

June 21, 2011.

D. Clay Taylor, Josiah R. Fricton, D. Clay Taylor, P.A., Minneapolis, MN, for respondent.

George C. Hottinger, Nicholas H. Jakobe, Erstad & Riemer, P.A., Minneapolis, MN, for appellant.

Considered and decided by JOHNSON, Chief Judge; ROSS, Judge; and BJORKMAN, Judge.

## OPINION

JOHNSON, Chief Judge.

An arbitrator ordered a general contractor to compensate two homeowners whose home had sustained damage due to moisture intrusion. The contractor's insurer refused to indemnify the contractor for its liability to the homeowners. The district court ruled that, as a matter of law, the insurance company is obligated to indemnify the contractor. We conclude that the district court erred by resting its decision on the fact that the attorney retained by the insurance company to represent the contractor in the arbitration proceeding failed to timely request a statement of reasons for the arbitration award. We further conclude that the contractor is not entitled to indemnification for liability arising from its own defective work or its alleged failure to inform the homeowners of pre-existing damage caused by other contractors. Therefore, we reverse the district court's entry of summary judgment in favor of the contractor and hold that the insurance company is entitled to summary judgment in its favor.

## FACTS

In January 2003, Mike and Peggy Provenzano hired Remodeling Dimensions, Inc. (hereinafter RDI), to perform work on their home in the city of Shoreview. A written agreement required RDI to build a ground-level, flat-roof addition to the home, which originally was built in 1993. The agreement provided that any disputes arising under the agreement would be submitted to the American Arbitration Association.

While RDI was working on the addition, the Provenzanos asked RDI to remove and reinstall a window to the master bedroom, which is in the original part of the home, so that the Provenzanos could move a large armoire into the bedroom. RDI

agreed to the request and removed and reinstalled the window. This work is not reflected in the written agreement or a change order. RDI completed all work on the addition and the master-bedroom window in June 2003.

In May 2004, the Provenzanos noticed damage to the siding of the addition. The Provenzanos hired an inspector, who concluded in July 2004 that some exterior walls of the addition had "higher than normal moisture readings." In the spring of 2006, the Provenzanos hired Northwest Diversified Services (hereinafter NDS) to investigate moisture problems in the home. NDS identified construction defects and moisture intrusion in both the original part of the home and the 2003 addition.

In July 2006, the Provenzanos filed an arbitration demand against RDI, alleging that RDI is liable for the damage that was discovered by NDS. The Provenzanos alleged that RDI's work on the 2003 addition was defective. Specifically, the Provenzanos alleged that RDI improperly installed the flat roof and improperly applied window trim. The Provenzanos also alleged that RDI negligently failed to inform them of pre-existing moisture damage in the original part of the home, which allegedly was visible when RDI removed and reinstalled the master-bedroom window. The Provenzanos sought $264,100 in damages.

RDI tendered the Provenzanos' claim to Integrity Mutual Insurance Company, which had provided it with a commercial general liability (CGL) insurance policy. In September 2006, Integrity Mutual agreed to defend RDI against the Provenzanos' claims and retained an attorney to represent RDI in the arbitration proceeding. Integrity Mutual provided a defense to RDI pursuant to a reservation of rights.

In January 2007, the arbitrator presided over a two-day hearing at the Provenzanos' home. In February 2007, the arbitrator issued a written award ordering RDI to pay to the Provenzanos the following amounts of damages:

| | |
|---|---|
| Basic house repairs | $45,000 |
| Flat roof repair | 2,000 |
| Replacement window costs | 0 |
| Final cleaning | 1,000 |
| NDS inspection costs | 0 |
| Design costs | 0 |
| Construction management fees | 3,000 |
| TOTAL AWARD: | $51,000 |

Upon receiving the arbitration award, RDI's attorney requested that the arbitrator provide an explanation of the award. In March 2007, the arbitrator denied RDI's request on the ground that neither party had requested an explanation of the award in writing before the appointment of the arbitrator, as required by rule 43(b) of the American Arbitration Association.

Integrity Mutual refused to indemnify RDI on the grounds, among others, that RDI's failure to inform the Provenzanos of pre-existing defects and moisture damage is not an "occurrence" and that RDI's defective work on the addition is subject to a "your work" exclusion. RDI paid $51,000 to the Provenzanos to satisfy the arbitration award.

In May 2010, RDI commenced this action, alleging a breach of contract and seeking damages for Integrity Mutual's failure to provide indemnification. RDI sought $49,000 in damages, conceding that the $2,000 in damages for flat-roof repair is within the "your work" exclusion. In July 2010, the parties filed cross-motions for summary judgment. In September 2010, the district court granted RDI's motion and denied Integrity Mutual's motion. The district court reasoned that, because the arbitrator did not provide an explanation of the arbitration award, the district court was unable to determine the basis or bases of RDI's liability to the Provenzanos. The district court stated that RDI's attor-

ney was responsible for the lack of an explanation of the arbitration award but that Integrity Mutual was responsible for RDI's attorney's omission. Accordingly, the district court concluded that Integrity Mutual may not deny coverage on the ground that the policy does not cover liability based on some, but not all, of the theories advanced by the Provenzanos at arbitration. Integrity Mutual appeals.

## ISSUES

I. If an attorney representing an insured in an arbitration proceeding fails to timely request an explanation of an arbitration award, is the insurer that retained the attorney responsible for the attorney's omission so as to prevent the insurer from denying coverage?

II. Is there a genuine issue of material fact as to whether Integrity Mutual is obligated to indemnify RDI for its liability to the Provenzanos?

## ANALYSIS

Integrity Mutual argues that the district court erred by granting RDI's motion for summary judgment and denying its own motion for summary judgment. Integrity Mutual's argument has two main parts. First, Integrity Mutual argues that the district court erred by reasoning that Integrity Mutual may not deny coverage on the ground that RDI's attorney did not timely request an explanation of the arbitration award. Second, Integrity Mutual argues that there is no genuine issue of material fact as to whether RDI is entitled to indemnification pursuant to the insurance policy issued by Integrity Mutual.

A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.,* 751 N.W.2d 558, 564 (Minn.2008). We apply a *de novo* standard of review to a grant of summary judgment, and we view the evidence in the light most favorable to the non-moving party. *Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 364 (Minn.2009).

The parties' arguments require us to interpret the language of the insurance policy. We apply general principles of contract interpretation when reviewing the terms of an insurance policy. *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). We give the language used in the policy its "natural and ordinary meaning." *American Family Ins. Co. v. Walser,* 628 N.W.2d 605, 609 (Minn.2001). If a contract is "clear and unambiguous," a court "should not rewrite, modify, or limit its effect by a strained construction." *Valspar Refinish, Inc.,* 764 N.W.2d at 364–65. "Whether a contract is ambiguous is a question of law that we review *de novo.*" *Carlson v. Allstate Ins. Co.,* 749 N.W.2d 41, 45 (Minn.2008).

## I.

Integrity Mutual first argues that the district court erred by reasoning that Integrity Mutual may not deny coverage on the ground that RDI's attorney did not timely request an explanation of the arbitration award. The district court began its analysis by noting that the arbitration

award "contains no explanation as to the damages and no one can say with any certainty what the arbitrator awarded damages for and why." The district court stated that the lack of a detailed award was "directly attributable to the inaction of" the attorney who represented RDI in the arbitration proceeding, which "prevented [RDI] from receiving a reasoned award which would have assisted all parties in determining whether the insurance policy covered the listed damages." The district court then reasoned that because Integrity Mutual was obligated to provide RDI with an attorney, the attorney's omission constituted a breach of contract by Integrity Mutual, which prevents Integrity Mutual from denying coverage to RDI.

■ To support its analysis, the district court relied on two cases from other jurisdictions, which the district court described as holding "that an insurer is liable for the actions of an attorney appointed to represent the insured." The two cases are *Stumpf v. Continental Cas. Co.*, 102 Or. App. 302, 794 P.2d 1228 (1990), and *Smoot v. State Farm Mut. Auto. Ins. Co.*, 299 F.2d 525 (5th Cir.1962) (applying Georgia law). The opinions of courts of other states are, of course, not binding on Minnesota courts, although they may at times have persuasive value. *See Mahowald v. Minnesota Gas Co.*, 344 N.W.2d 856,

861 (Minn.1984). But the district courts and this court may not rely on foreign caselaw to the extent that the foreign caselaw is inconsistent with Minnesota law. *See Midland Credit Mgmt. v. Chatman*, 796 N.W.2d 534, 536 n. 3 (Minn.App.2011); *Brainerd Daily Dispatch v. Dehen*, 693 N.W.2d 435, 439–40 (Minn.App.2005); *Percy v. Hofius*, 370 N.W.2d 490, 491 (Minn. App.1985).

We set aside the question whether *Stumpf* and *Smoot* support the district court's reasoning,[1] and we go directly to the question whether the rule of law applied by the district court is consistent with Minnesota law. The district court's reasoning implicates Minnesota caselaw concerning the inter-relationships between an insurer, an insured, and an attorney retained by the insurer to represent the insured. The supreme court has described this set of inter-relationships as a "tripartite relationship." *Pine Island Farmers Coop v. Erstad & Riemer, P.A.*, 649 N.W.2d 444, 445, 449 (Minn.2002). The supreme court has recognized that when the interests of the insurer and the insured are adverse, an attorney "will tend to favor the interests of the insurer at the expense of those of the insured." *Id.* at 450. The supreme court has observed that this tendency may be driven by the attorney's desire to please the insurer, who pays the attorney's fees and determines whether

---

1. *Stumpf* and *Smoot* do not appear to justify the proposition that an insurer should be held responsible for an insured's failure to request an explanation of an arbitration award. In *Smoot*, an individual alleged that an automobile insurer engaged in bad faith by failing to settle a claim within the policy limits. 299 F.2d at 531. In *Stumpf*, a medical doctor alleged and proved at trial that an attorney retained by the insurer negligently evaluated, investigated, and negotiated a claim against the doctor, which resulted in a jury verdict that was $2 million more than the policy limits. 794 P.2d at 1230. These cases simply reflect the possibility that an attorney might

inappropriately subordinate the interests of his or her client, the insured, for the purpose of favoring the interests of the insurer. If an attorney does so, he or she violates the duty of loyalty owed to a client. *See* Minn. R. Prof. Conduct 1.7(a)(2). But neither *Stumpf* nor *Smoot* holds that an attorney *should* serve the interests of the insurer at the expense of the insured, or that a court should assume that an attorney has done so. And there is no evidence or argument in this case that RDI's attorney engaged in bad faith or that Integrity Mutual actually exerted control over RDI's attorney.

the attorney will be awarded future business. *Id.* at 450–51.

 The existence of a tripartite relationship, however, does not displace the enduring fundamental principle that "defense counsel hired by an insurer to defend a claim against its insured represents the insured." *Id.* at 449. As in any attorney-client relationship, an attorney retained by an insurer to represent an insured "owes a duty of undivided loyalty to the insured and must faithfully represent the insured's interests." *Id.* Accordingly, "an attorney retained by an insurer to defend its insured ... is under the same obligations of fidelity and good faith as if the insured had retained the attorney personally." *Id.* (quoting *Crum v. Anchor Cas. Co.,* 264 Minn. 378, 392, 119 N.W.2d 703, 712 (1963)) (alteration omitted).

 Nonetheless, dual representation of an insured and an insurer is permissible in limited circumstances, if the interests of an insured and an insurer are not adverse so that an attorney does not have a conflict of interest. *Id.* at 452. In that situation, the attorney may represent both the insured and the insurer, so long as two conditions are satisfied: first, the insured must consult with an attorney who explains "the implications of dual representation and the advantages and risks involved," and, second, the insured must expressly consent to the dual representation after the consultation. *Id.; cf.* Minn. R. Prof. Conduct 1.7(b)(4).

In this case, it is undisputed that the attorney retained by Integrity Mutual to represent RDI had a duty of loyalty to RDI. The district court's reasoning raises the question whether the attorney also had a duty of loyalty to Integrity Mutual, which turns on whether the attorney represented Integrity Mutual as well as RDI. Dual representation would have been proper only if the attorney would not have

had a conflict of interest. *See Pine Island,* 649 N.W.2d at 452. Undoubtedly, RDI's interests and Integrity Mutual's interests were aligned while the arbitration proceeding was pending to the extent that each had an interest in avoiding liability or minimizing damages. Accordingly, while the arbitration proceeding was pending, the attorney could have shared information with Integrity Mutual, or Integrity Mutual could have contributed toward the attorney's defense strategy. *See id.* at 450. But RDI's interests and Integrity Mutual's interests would *not* have been aligned to the extent that either of them desired an explanation of the arbitration award. As illustrated by this lawsuit, an explanation of an arbitration award may determine whether an insurer has a duty to indemnify an insured. RDI's attorney would have had a conflict of interest if he had represented both RDI and Integrity Mutual and had been called upon to request an explanation of the arbitration award. Thus, *Pine Island*'s precondition for proper dual representation—the absence of a conflict of interest—is not satisfied.

Furthermore, even if a conflict of interest did not exist, *Pine Island*'s two primary conditions for proper dual representation also would not be satisfied. First, there is no evidence in the summary judgment record that RDI consulted with the attorney appointed by Integrity Mutual or with any other attorney concerning the risks of dual representation. And second, there is no evidence in the summary judgment record that RDI expressed its consent to dual representation. Thus, the attorney appointed by Integrity Mutual to represent RDI in the arbitration proceeding did not have an attorney-client relationship with Integrity Mutual.

Because RDI's attorney did not represent Integrity Mutual, the attorney had no duty toward Integrity Mutual to request

an explanation of the arbitration award. Absent such a duty, Integrity Mutual cannot be held responsible for the attorney's failure to timely request an explanation of the arbitration award. The district court erred by presupposing an attorney-client relationship between RDI's attorney and Integrity Mutual that did not exist and, in fact, would have been prohibited by *Pine Island.*

Thus, the district court erred by concluding that Integrity Mutual may not deny coverage on the ground that RDI's attorney did not timely request an explanation of the arbitration award.

## II.

Integrity Mutual also argues that the district court erred because there is no genuine issue of material fact as to whether RDI is entitled to indemnification of its liability to the Provenzanos and because Integrity Mutual is entitled to judgment as a matter of law. Integrity Mutual argues that the district court erred for three reasons. First, Integrity Mutual argues that the insurance policy does not provide coverage for any liability on the Provenzanos' claim that RDI failed to inform them of pre-existing moisture damage in the original part of the home. Second, Integrity

Mutual argues that, under the business-risk doctrine, the insurance policy excludes coverage for liability on the Provenzanos' claim related to RDI's work on the 2003 addition. Third, Integrity Mutual argues that, in light of the foregoing propositions, there is no genuine issue of material fact as to whether the insurance policy provides RDI with coverage for liability to the Provenzanos and that Integrity Mutual is entitled to judgment as a matter of law.[2]

## A. Duty–to–Inform Claim

■ Integrity Mutual argues that the insurance policy does not provide coverage for any liability incurred by RDI on the Provenzanos' claim that RDI negligently failed to inform them of pre-existing defects in the original part of the Provenzanos' home when RDI removed and reinstalled the master-bedroom window. At the arbitration hearing, the Provenzanos' expert testified that, in the course of its work, RDI discovered that the window had not been installed properly and that RDI should have informed the Provenzanos of that fact.

The indemnity provision of the policy states, in relevant part:

2. Both Integrity Mutual and RDI briefed the issues of coverage and exclusions in the district court. The district court did not reach those issues because it resolved the parties' cross-motions on the basis of the issue discussed above in part I. Appellate review ideally occurs after issues are presented to *and* decided by a district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988) (holding that respondent did not properly preserve issue of timing of accrual of cause of action because she failed to assert it in district court). But in some circumstances, appellate review may occur in the absence of a decision by a district court if an issue was fully presented to the district court by the party pursuing it on appeal. *Compare Day Masonry v. Independent Sch. Dist. 347,* 781 N.W.2d 321,

330–32 (Minn.2010) (considering statute-of-repose issue presented to district court, even though district court did not decide issue), *with J.E.B. v. Danks,* 785 N.W.2d 741, 751 n. 4 (Minn.2010) (declining to consider alternative grounds for summary judgment that district court had not yet decided). Considering issues presented to but not decided by a district court may be appropriate if the issue does not require fact-finding or discretionary decisionmaking by the district court and is subject to *de novo* review by this court. Considering such issues also may be appropriate in insurance-coverage litigation "to forestall additional litigation." *Franklin v. Western Nat'l Mut. Ins. Co.,* 574 N.W.2d 405, 407 n. 2 (Minn.1998).

a. We will pay those sums that the insured becomes legally obligated to pay as damages *because of* "bodily injury," *"property damage,"* "personal injury" or "advertising injury" to which this insurance applies.

. . . .

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or *"property damage"* is *caused by* an *"occurrence"* that takes place in the coverage territory; and

(b) The "bodily injury" or "property damage" occurs during the policy period.

(Emphases added.) Integrity Mutual contends that RDI's failure to identify the pre-existing defects and to inform the Provenzanos of those defects is not an "occurrence," as required by the policy. RDI argues that its liability is based on an "occurrence" because the Provenzanos' failure-to-inform claim is based on property damage that resulted from an "occurrence," namely, water intrusion caused by the previous contractor's defective installation of the window.

The insurance policy in this case defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define the term "accident." But in a similar context, the supreme court has interpreted the term "accident" to mean "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Hauenstein v. Saint Paul–Mercury Indem. Co.*, 242 Minn. 354, 358–59, 65 N.W.2d 122, 126 (1954). This interpretation of the term "accident" may encompass an event such as water intrusion. But the event for which RDI was held liable was its failure to inform the Provenzanos of pre-existing defective work and resulting water intrusion. Under the terms of the policy, coverage exists only if an insured's liability arises "because of" property damage, and only if that property damage was caused by an occurrence. In this case, RDI's liability was caused not by property damage itself but by RDI's failure to inform the Provenzanos of pre-existing property damage that RDI discovered in the course of its removal and reinstallation of the master-bedroom window. RDI's failure to inform the Provenzanos of property damage is not an "occurrence" because it is not an "accident" in the sense of "continuous or repeated exposure to substantially the same general harmful conditions."

Integrity Mutual also contends that RDI's failure to identify the home's pre-existing defects and to inform the Provenzanos of those defects did not cause "property damage," as required by the policy. Indeed, RDI's liability was caused not by property damage itself but by a different form of injury to Provenzanos, such as the loss of a claim against the contractor that built the original part of the home. This court has held that the loss of an investment does not constitute "property damage" under a CGL policy. *See Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 425 (Minn.App.1995), *review denied* (Minn. May 31, 1995). Furthermore, RDI was not responsible for the damage to the original part of the home. The facts of this case are analogous to those of *Tower Ins. Co. v. Minnesota Holstein–Freisan Breeders' Ass'n*, 605 N.W.2d 768 (Minn. App.2000), in which a livestock broker sought indemnification from its insurer after it was held liable to farmers who had purchased a diseased herd of dairy cattle, many of which died or were destroyed shortly after delivery. *Id.* at 770–71. The farmers' theory of liability was that the

broker had given negligent advice. *Id.* at 770. This court held that the broker's liability for negligent advice was not caused by property damage, as required by the CGL policy. *Id.* at 772. We reasoned that, even though the dairy herd had been damaged, that damage was not traceable to the broker because the damage existed before the broker performed services for the farmers. *Id.* Likewise, there is no "property damage" in this case giving rise to coverage because the Provenzanos' property damage was pre-existing and, thus, was not traceable to RDI.

Thus, we conclude that the insurance policy does not provide coverage for any liability incurred by RDI on the Provenzanos' theory that RDI negligently failed to inform them of pre-existing defects in the original part of the Provenzanos' home when RDI removed and reinstalled the master-bedroom window.

### B. Business–Risk Exclusions

Integrity Mutual also argues that the insurance policy does not provide coverage for any liability of RDI on the Provenzanos' claim that RDI performed defective work on the addition to the home, which caused moisture intrusion and resulting property damage. Integrity Mutual contends that the business-risk doctrine excludes coverage on such a claim.

 A typical CGL insurance policy that incorporates the business-risk doctrine "does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co. of Am.*, 323 N.W.2d 58, 64 (Minn.1982) (quotation omitted). Otherwise, an insured contractor would have "the opportunity or incentive ... to be less than optimally diligent in

these regards in the performance of his contractual obligations to complete a project in a good workmanlike manner." *Wanzek Constr., Inc. v. Employers Ins. of Wausau,* 679 N.W.2d 322, 326 (Minn.2004) (quoting *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 234 (Minn.1986)). Accordingly, the business-risk doctrine excludes coverage for liability for property damage caused by an insured's "faulty workmanship." *Sphere Drake Ins. Co. v. Tremco, Inc.*, 513 N.W.2d 473, 479 (Minn.App.1994), *review denied* (Minn. Apr. 28, 1994).

 In this case, Integrity Mutual relies on two of the policy's exclusions to coverage, which collectively reflect the business-risk doctrine. First, exclusion "*l*" excludes coverage for " '[p]roperty damage' to 'your product' arising out of it or any part of it." The policy defines "your product" to mean "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You; (2) Others trading under your name; or (3) A person or organization whose business or assets you have acquired." It appears undisputed that the addition built by RDI was RDI's "product." But the exclusion applies to goods or products "other than real property," and the term "real property" in this context includes " 'anything growing on, attached to, or erected on it.' " *Wanzek Constr.,* 679 N.W.2d at 327 (quoting *Black's Law Dictionary* 1234 (7th ed.1999)). The addition is not within the "your product" exclusion because it is an improvement to real property. Thus, exclusion "*l*" does not exclude coverage for RDI's work in this case. *See id.* (holding that "your product" exclusion does not apply to coping stones on perimeter of swimming pool because of real-property exception).

 Second, exclusion "m" excludes coverage for " '[p]roperty damage' to 'your

work' arising out of it or any part of it and included in the products-completed operations hazard." The policy defines "your work" to mean "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." RDI concedes that exclusion "m" applies "to the actual work" it performed but contends that exclusion "m" does *not* apply "to *other portions of the structure or property.*" More specifically, RDI contends that exclusion "m" does not apply because RDI's liability arises from its work on the window trim on the original part of the home, which caused moisture damage to the pre-existing walls and structure of the home.

The flaw in RDI's contention is that it is outside the scope of its pleadings. In its complaint, RDI never alleged that its liability to the Provenzanos arose from property damage to the original part of the home that was caused by its own defective work. Rather, RDI alleged that it was liable to the Provenzanos on only two theories: first, for its failure to inform the Provenzanos of pre-existing property damage to the original part of the home and, second, for its defective work on the addition. These are the only two theories for which RDI sought indemnification from Integrity Mutual. RDI never argued to the district court that it incurred liability to the Provenzanos for property damage to the original part of the home caused by its own defective work. Furthermore, RDI's counsel conceded at oral argument in this court that the Provenzanos' expert's report stated that the only property damage to the original portion of the home arose from RDI's failure to report pre-existing construction defects. Thus, exclusion "m" excludes coverage in this case.

## C. Duty to Indemnify

Finally, we consider the district court's reasoning that it is impossible to determine whether RDI's liability to the Provenzanos was based on a claim that is within Integrity Mutual's duty to indemnify. The district court stated that an explanation of the arbitration award is essential to determining whether RDI's liability is covered by the policy.

A liability insurer has two duties to an insured: a duty to defend and a duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. National Chiropractic Mut. Ins.*, 496 N.W.2d 411, 415 (Minn.App. 1993), *review denied* (Minn. Apr. 29, 1993). Whether an insurer has a duty to defend "is determined by the allegations of the complaint and the indemnity coverage of the policy." *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn.1979). An insurer must defend an insured if "any part of the claim is arguably within the scope of coverage afforded by the policy." *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825 (Minn.1980).

Whether an insurer has a duty to indemnify, however, is determined by the factual findings of a jury, viewed in light of a district court's instructions; the findings and conclusion of a district court judge presiding over a court trial; or the bases of an arbitrator's award. *See* 22 *Minnesota Practice—Insurance Law & Practice* § 3:2, at 58 (2d ed.2010) (stating that duty to indemnify depends on "claims actually proven in the underlying trial, verdict and judgment"). Sometimes the bases of liability may be unstated or stated in vague or ambiguous terms; in that situation, both an insurer and an insured face problems of proof. If liability arises from a settlement but there is no definitive statement of the legal basis of the insured's liability, the indemnification question may depend on circumstantial evidence. *See St. Paul Fire & Marine Ins. Co.*, 496 N.W.2d at 415–16. For example, "the evi-

dence presented to the jury constitutes the claim of a party" such that it "supersed[es] the party's description of the claim" as well as the party's discovery responses and trial memorandum. *Id.* at 416 (analyzing duty to indemnify following voluntary settlement of claims).

Integrity Mutual contends that neither an explanation by the arbitrator nor circumstantial evidence is necessary in this case because there is no coverage for *any* of the claims that were at issue in the arbitration proceeding and were alleged in the complaint in this case. In light of our discussion above in parts II.A. and II.B., we agree. RDI alleged that Integrity Mutual must provide indemnification because RDI's liability is based on either or both of two theories. We have concluded that neither theory is one for which coverage is available. Thus, Integrity Mutual is not obligated to indemnify RDI for its liability to the Provenzanos.

## DECISION

The district court erred by granting RDI's motion for summary judgment and by denying Integrity Mutual's motion for summary judgment on the ground that the attorney retained by Integrity Mutual to defend RDI did not timely request an explanation of the arbitration award. Integrity Mutual is not obligated to indemnify RDI because its liability to the Provenzanos for failure to inform them of pre-existing defects is not within the policy's grant of coverage and because its liability to the Provenzanos for defective work is within exclusion "m." Therefore, Integrity Mutual is entitled to summary judgment, and RDI is not entitled to summary judgment.

**Reversed.**