REMODELING DIMENSIONS,
INC., Appellant,

v.

INTEGRITY MUTUAL INSURANCE
COMPANY, Respondent.

No. A10–1992.

Supreme Court of Minnesota.

Aug. 22, 2012.

---

604

D. Clay Taylor, Josiah R. Fricton, D. Clay Taylor, P.A., Minneapolis, MN, for appellant.

George C. Hottinger, Nicholas H. Jakobe, Erstad & Riemer, P.A., Minneapolis, MN, for respondent.

## OPINION

DIETZEN, Justice.

The issue before us is whether an insurer is vicariously liable for the failure of the attorney it appointed to represent the insured to request a written explanation of an arbitration award. Appellant Remodeling Dimensions, Inc. (RDI), a home remodeling contractor, received a demand for arbitration regarding allegedly defective work it performed on a remodeling project. RDI tendered the demand to its insurer, respondent Integrity Mutual Insurance Company (Integrity), and Integrity accepted defense of the claim under a reservation of rights. The arbitrator issued a general arbitration award in favor of the homeowners. When Integrity refused to pay the award, RDI paid the homeowners and sued Integrity for indemnification under the policy. On cross-motions for summary judgment, the district court granted RDI's motion, concluding that Integrity was vicariously liable for the failure of the attorney it appointed to represent RDI to request a written explanation of the arbitration award. The court of appeals reversed, concluding that Integrity had the right to challenge coverage of the claim even though no detailed award was obtained, and that the claim was not covered under the insurance policy. We granted review and now reverse the court of appeals.

The events surrounding the damage to the homeowners' home are largely undisputed. In January 2003, RDI entered into a construction agreement to build an addition on the east side of a house and install trim on windows in the original part of the house. Additionally, after RDI began work on the project, the homeowners asked and RDI agreed to remove and reinstall the master bedroom window in the original part of the house. The agreement between RDI and the homeowners provided that disputes arising out of the construction work would be resolved by binding arbitration through the construction industry rules of the American Arbitration Association (AAA).

RDI completed the project in June 2003. In May 2004, the house sustained storm damage. In the course of repairing the storm damage, the homeowners noticed damage to the siding of the house and

hired a consultant to conduct an inspection to evaluate the problem. The consultant reported significant moisture and related damage in several areas. In the spring of 2006, the homeowners hired a second consultant, who found moisture in the structural parts of the house and recommended repair work to the house. The cause of the moisture intrusion and damage was a matter of considerable dispute between RDI and the homeowners.

In July 2006, the homeowners served an arbitration demand upon RDI and filed it with the AAA. The homeowners claimed that defects in RDI's construction work caused water damage to the house and that RDI was negligent in failing to warn them of defects in the original construction of the house, which prevented the homeowners from bringing claims against the original builder within the statutory warranty period. *See* Minn.Stat. § 327A.02, subd. 1(c) (2010). The homeowners sought damages totaling $264,100.

The facts regarding the tender of the arbitration demand to Integrity and its response to RDI are neither complete nor well developed in the record. At some point, pursuant to its liability insurance policy, RDI tendered the homeowners' arbitration demand to Integrity. By September 7, 2006, Integrity had appointed an attorney to represent RDI in the arbitration proceedings. On September 21, 2006, the AAA appointed an arbitrator to decide the case. The next day, Integrity sent RDI a reservation-of-rights letter, stating that it questioned whether the homeowners' claims were covered under the insurance policy and reserving its right to deny coverage notwithstanding the outcome of the arbitration.

On January 10, 2007, Integrity sent RDI a second letter that stated:

> The purpose of this correspondence is also to alert you of your duties in this matter. It will be up to you and your counsel to fashion an arbitration award form that addresses the coverage issues and your respective burden. If, for example, the arbitration award ultimately rendered makes it impossible to determine whether any of the damages awarded involve "property damage" that occurred during the Integrity policy period, Integrity will not be responsible to indemnify an ambiguous award.

Following the arbitration hearing, the arbitrator awarded the homeowners $45,000 for "basic house repairs," $2,000 for "flat roof repair," $1,000 for "final cleaning," and $3,000 for "construction management fees." The arbitrator awarded nothing for replacement window costs, inspection costs, and design costs.

RDI's attorney then requested further written explanation of the award. The arbitrator denied the request as untimely on the basis that "the parties did not request an explanation of the Award in writing prior to the appointment of the arbitrator as required by R–43(b)." AAA Construction Industry Arbitration Rule 43(b) (amended and effective September 15, 2005)[1] states:

> The arbitrator shall provide a concise, written breakdown of the award. If requested in writing by all parties prior to the appointment of the arbitrator, or if the arbitrator believes it is appropriate to do so, the arbitrator shall provide a written explanation of the award.

---

1. Throughout this litigation, the parties have mistakenly cited Rule 42(b) of the AAA Commercial Arbitration Rules. The agreement between RDI and the homeowners, however, provides in paragraph 8 that AAA "construction industry arbitration rules" are applicable. Consequently, Rule 43(b) applies.

Subsequently, Integrity denied coverage of the award. RDI paid the homeowners the award amount and then commenced a declaratory judgment action against Integrity, alleging breach of contract for Integrity's refusal to pay the arbitration award, excluding $2,000 for flat roof repair, which RDI conceded was not covered by the insurance policy. Both parties moved for summary judgment, and the district court granted RDI's motion, concluding that the vague arbitration award made it impossible to determine whether the insurance policy covered any of the homeowners' successful claims and was directly attributable to the attorney's inaction. Therefore, the district court concluded that Integrity was legally responsible for the attorney's conduct. The court reasoned that Integrity should pay the entire award because an attorney hired by an insurer to defend an insured is an agent of the insurer, and the insurer is therefore vicariously liable for the attorney's failure to request a written explanation of the award.

The court of appeals reversed and ordered the district court to enter summary judgment in favor of Integrity. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 806 N.W.2d 82 (Minn.App.2011). The court determined that the attorney hired by Integrity to represent RDI did not have an attorney-client relationship with Integrity, and therefore Integrity is not responsible for the attorney's failure to make a timely request for a written explanation of the award. *Id.* at 89–90. Additionally, the court concluded as a matter of law that the homeowners' claims against RDI are not covered losses under the insurance policy. *Id.* at 91–93.

## I.

On appeal, RDI argues that the court of appeals erred in concluding that its claim is not covered under the insurance policy.

Additionally, RDI asserts that Integrity is either vicariously or directly liable for the failure of the attorney Integrity appointed to represent RDI to request a written explanation of the arbitration award that would have resolved the coverage dispute.

■■■ We review a decision of the district court regarding motions for summary judgment to determine whether there are any genuine issues of material fact that would preclude summary judgment and whether the district court erred in its application of the law. *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581 (Minn.2010). In doing so, we view the evidence in the light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009). When the parties file cross-motions for summary judgment, however, they "tacitly agree[ ] that there exist no genuine issues of material fact...." *Am. Family Mut. Ins. Co. v. Thiem*, 503 N.W.2d 789, 790 (Minn.1993). We review the district court's application of the law de novo. *Dykes*, 781 N.W.2d at 581.

## A.

We first address whether the homeowners presented a claim for damage that, if proven, would be covered under the insurance policy. Integrity argues that it is entitled to summary judgment because the only claims presented by the homeowners in the arbitration proceeding were not covered or were excluded from coverage under the policy. Specifically, Integrity argues that the homeowners' claims did not satisfy the definition of an "occurrence" under the policy, and were excluded under the business-risk exclusion in the policy.

■■■ The interpretation of an insurance policy and application of the policy to the facts of a case are questions of law that we review de novo. *W. Nat'l Ins. Co. v.*

*Thompson,* 797 N.W.2d 201, 205 (Minn. 2011); *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 609 (Minn.2001). Insurance policies are contracts and, absent statutory provisions to the contrary, general principles of contract law apply. *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.,* 702 N.W.2d 237, 244 (Minn.2005).

According to RDI, the homeowners presented three claims at the arbitration proceedings. They are that RDI failed to inform the homeowners of its discovery of existing water intrusion and resulting damage to the original house (failure-to-inform claim), negligent construction of the addition, and negligent construction of the work RDI performed to the original house and resulting water intrusion and damage to the adjacent structures and wall of the house.

The insurance policy covers property damage caused by an "occurrence" that takes place during the policy period and within the coverage territory. An "occurrence" is defined in the policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define the term "accident." Previously, we have interpreted the term "accident" in a similar context to mean "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Hauenstein v. Saint Paul–Mercury Indem. Co.,* 242 Minn. 354, 358–59, 65 N.W.2d 122, 126 (1954).

■ The court of appeals concluded that the homeowners' failure-to-inform (original house) claim does not satisfy the definition of "occurrence" for the reasons expressed in the court's opinion. *See Remodeling Dimensions,* 806 N.W.2d at 91. We agree with the court's conclusion and underlying reasoning regarding the failure-to-inform claim. Specifically, the failure to inform the homeowners of a preexisting defect in the original home construction is not an "occurrence" attributable to RDI.

■ Initially, we observe that the court of appeals did not reach the question of the homeowners' negligent-construction (original house) claim because it concluded that the claim was outside the scope of RDI's pleadings. We disagree. RDI's complaint broadly asserts that the homeowners' claims are covered under the policy and seeks indemnification for the arbitration award. *See* Minn. R. Civ. P. 8.01 ("A [complaint] ... shall contain a short and plain statement of the claim...."). We interpret RDI's complaint to include the homeowners' negligent-construction (original house) claim.

■ Both negligent construction claims allege moisture damage resulting from "continuous or repeated exposure" to water intrusion into the house. Pursuant to the insurance policy, both of the homeowners' negligent-construction claims, if proven, satisfy the meaning of "occurrence" under the policy.

■ Integrity next argues that the business-risk exclusions in the policy bar coverage of the negligent-construction claims. Generally, a business-risk exclusion is predicated on the business-risk doctrine, which excludes coverage for property damage caused by the insured's " 'faulty workmanship' " where the damages claimed are the cost of correcting the work itself. *Wanzek Constr., Inc. v. Emp'rs Ins. of Wausau,* 679 N.W.2d 322, 325–26 (Minn.2004) (quoting *Bor–Son Bldg. Corp. v. Emp'rs Commercial Union Ins. Co. of Am.,* 323 N.W.2d 58, 64 (Minn.1982)). The Integrity policy incorporates the business-risk doctrine in exclusions "l" and "m." Specifically, exclusion "l" applies to " '[p]roperty damage' to 'your product' arising out of it or any part of it." The court of appeals concluded that exclusion

"l" does not bar coverage for RDI's work in this case. *Remodeling Dimensions*, 806 N.W.2d at 92. The court reasoned that the exclusion applied only to goods and products, and does not exclude coverage for RDI's work performed in this case. *Id.* The court's analysis is persuasive and supported by the record.

Exclusion "m" excludes coverage for property damage to "your work" arising out of the work or any part of it. The policy defines "your work" to mean "[w]ork or operations performed by you or on your behalf." RDI concedes that exclusion "m" applies "to the actual work" it performed on the house, but contends that exclusion "m" does not apply to damage caused by RDI's work to the original walls and structure of the home. The court of appeals concluded that the negligent-construction (addition) claim was excluded under exclusion "m." *Id.* at 92.[2]

We conclude that exclusion "m" applies to the homeowners' negligent-construction (addition) claim because the damage claimed was to addition work performed entirely by RDI. But the negligent-construction (original house) claim is not excluded by paragraph "m." Specifically, the work performed on the original house by RDI was limited to the remodel and installation of the master bedroom window and other trim work. We read exclusion "m" to exclude the work performed by RDI on portions of the original house but exclusion "m" does not apply to adjacent walls and structures that had moisture damage caused by the work performed by RDI. *See, e.g., Brown v. Concord Grp. Ins. Co.*, 163 N.H. 522, 44 A.3d 586, 589–90 (2012) (holding that "your

work" exclusion is triggered only where "the damage at issue is to work performed by 'you' and is caused by work performed by 'you' " and does not apply to damage caused to original construction of a house during later repair work); *Mut. of Enumclaw Ins. Co. v. T & G Constr., Inc.*, 165 Wash.2d 255, 199 P.3d 376, 385 (2008) (holding that "your work" exclusion does not bar coverage of repairs made necessary when an insured contractor damaged the subsurfaces beneath the siding it installed). Thus, a negligent-construction claim for moisture damage caused by RDI to the preexisting walls and structure of the original home—located adjacent to work performed by RDI—would, if proven, be a covered claim under the Integrity insurance policy. We therefore must examine the record to determine whether such a claim was presented by the homeowners at the arbitration proceeding.

The arbitration record before us is incomplete, but includes a post-arbitration letter from Integrity which states that, in addition to a claim for negligent failure to warn the homeowners of negligent construction by the original contractor, "[t]he [homeowners] also claim that improper construction practices of [RDI] independently acted to damage their home." According to the letter, the claim included, among others, allegations "concern[ing] the removal and replacement of siding around the windows at the lakeside elevation of the house ... to install window trim" and "the removal and reinstallation of a master bedroom window," both of which were performed on the original portion of the house.

---

2. The court of appeals concluded that the negligent-construction (original house) claim was outside the scope of RDI's pleadings, and RDI conceded that point at oral argument. *Id.* at 92. But RDI now disputes that it made

such a concession. Having previously concluded that the negligent-construction (original house) claim was within RDI's complaint, we examine the merits of the exclusion "m" affirmative defense.

Similarly, the homeowners' pre-arbitration submissions to AAA argued that damage to the original structure of the home was caused by defects in RDI's work. The homeowners' arbitration claim specifically identified defects in RDI's work on the windows and trim in the original section of the house and alleged that RDI's defective work directly damaged the house. The report and testimony of the homeowners' expert confirm that the homeowners did not abandon these claims at the arbitration hearing. The homeowners' expert report identified defects in RDI's work as the cause—or potential cause—of water damage to the original portion of the home. For example, regarding window trim installed by RDI on the original portion of the house, the report states: "At the siding cut made to install the trim board, the Bildrite siding was cut. This saw cut was not sealed prior to the installation of the trim boards. The saw cut voided the water repellant classification of the sheathing." At the arbitration hearing, the expert testified that RDI's negligent installation of the window trim caused moisture problems in adjacent portions of the original structure of the house. Thus, the record supports the conclusion that the homeowners presented the negligent-construction (original house) claim at the arbitration proceeding.

In summary, we conclude that the failure-to-inform and negligent-construction (addition) claims are not covered by the insurance policy, and the negligent-construction (original house) claim, if proven, would be covered by the insurance policy. Therefore, the arbitration award may be attributable, in whole or in part, to a covered claim. Thus, the court of appeals erred in concluding that Integrity was entitled to summary judgment because no part of the award could be attributable to a covered claim.

B.

RDI next argues that the court of appeals erroneously concluded that its attorney did not represent Integrity in the arbitration proceeding and therefore Integrity could not be vicariously or directly liable for the failure of the attorney to obtain a written explanation of the award. *Remodeling Dimensions*, 806 N.W.2d at 89–90. RDI argues that Integrity is vicariously liable for the failure of the attorney, acting as Integrity's agent, to obtain the explanation of the award. To answer the question presented, we must examine the tripartite relationship between an insurer, the insured, and the attorney defending the arbitration claim.

■ It is well established that an attorney hired by an insurer to defend a claim against its insured represents the insured. *Miller v. Shugart*, 316 N.W.2d 729, 733 (Minn.1982). Since the attorney has an attorney-client relationship with the insured, the attorney owes a duty of undivided loyalty to the insured and must faithfully represent the insured's interest. *Crum v. Anchor Cas. Co.*, 264 Minn. 378, 392, 119 N.W.2d 703, 712 (1963). But we have not held that an attorney cannot have an attorney-client relationship with both the insured and the insurer. *Shelby Mut. Ins. Co. v. Kleman*, 255 N.W.2d 231, 235 (Minn. 1977). In *Kleman*, we determined that a law firm representing an insurance company could also represent the insured in the same matter because there was no apparent conflict of interest between the insurer and the insured, the insured consulted with an independent attorney who advised that obtaining separate counsel was unnecessary, and the insured had expressly consented to the dual representation. *Id.*

The court of appeals relied on our decision in *Pine Island Farmers Coop v. Erstad & Riemer, P.A.*, 649 N.W.2d 444

(Minn.2002), to support its conclusion that the attorney did not represent Integrity in the arbitration proceeding. *Remodeling Dimensions*, 806 N.W.2d at 88–90. In *Pine Island*, the plaintiff insurer and the insured brought a legal malpractice claim against Erstad & Riemer, the law firm appointed to represent the insured in the liability action, for failure to assert a third-party claim. 649 N.W.2d at 445–46. The insurer and insured claimed that they both had an attorney-client relationship with the law firm. *Id.* at 446. On appeal, we held that Erstad & Riemer did not represent the insurer in the liability action, and therefore no attorney-client relationship existed as to that representation and the malpractice claim failed. *Id.* at 452. In doing so, we concluded that absent a conflict of interest between the insurer and the insured, the insurer can become a co-client of defense counsel in the liability action provided that two conditions are met. *Id.* at 451. First, defense counsel or another attorney must consult with the insured regarding the implications of the dual representation and the advantages and risks involved. *Id.* Second, after consultation, the insured must give its express consent to the representation. *Id.* Our decision was predicated on the unique characteristics of the tripartite relationship between the insurer, the insured, and defense counsel. *See id.*

We conclude that *Pine Island* is inapposite. Unlike in *Pine Island*, RDI's theory of recovery is that Integrity is vicariously liable for the failure of the attorney to obtain an explanation of the arbitration award. Thus, the question is whether a principal-agency relationship existed between Integrity and the attorney, not whether the attorney represented Integrity in the arbitration proceeding. This question was not decided by *Pine Island*.[3] Moreover, the question of whether an attorney-client relationship existed between Integrity and the attorney was considered, sua sponte, by the court of appeals. It was not argued to or considered by the district court. Consequently, the record before us is insufficient to determine whether an attorney-client relationship existed between Integrity and the attorney it appointed to represent RDI. For these reasons, we turn to the merits of RDI's claim that Integrity is vicariously liable for the failure of its attorney to request an explanation of the arbitration award.

## II.

■■■ Generally, liability may be direct or vicarious. Direct liability is the imposition of liability when one party breaches a personal duty it owes to the other party. *Sutherland v. Barton*, 570 N.W.2d 1, 5 (Minn.1997). Integrity, as RDI's insurer, may be directly liable to RDI for Integrity's own actionable conduct. Vicarious liability, however, is the imposition of liability on one person for the actionable conduct of another person, based solely on the legal relationship between the two persons. *Id.; Black's Law Dictionary* 934 (8th ed.2004).

■■■ A principal may be legally responsible for the actionable conduct of its agent committed in the course and within the scope of the agency. *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn. 1992). Specifically, the principal is held vicariously liable to another, irrespective of its own fault, for the actionable conduct of its agent. *Nadeau v. Melin*, 260 Minn.

---

**3.** RDI does not argue that Integrity had a conflict of interest that transformed the duty to defend RDI into a duty to reimburse RDI for reasonable attorney fees incurred in de-fending the lawsuit, and therefore we decline to reach that issue. *See Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 391 (Minn. 1979).

369, 375–76, 110 N.W.2d 29, 34 (1961). But a principal can be vicariously liable to a third party for the conduct of its agent *only* if the agent would be liable to the third party for that act. 57B Am. Jur. 2d *Negligence* § 1104 (2011) (stating that "[i]t is fundamental that in order to establish imputed liability for harm, injury or damage caused by the *wrongful act* of another, the injury victim must establish that the actor did commit a tort" and "the duty of care at issue is that of the servant [to the third party]") (emphasis added); *Black's Law Dictionary* 934 (8th ed.2004) (defining "vicarious liability" as liability borne by a supervisory party "for the *actionable conduct* of a subordinate or associate ... based on the relationship between the two parties") (emphasis added). A principal, however, is not liable for an unauthorized intentional tort of its agent. *Semrad,* 493 N.W.2d at 535. Thus, a principal cannot be vicariously liable for the negligent acts of its alleged agent unless the alleged agent: (1) owed a duty of care to the person claiming damages; (2) breached that duty; and (3) was the agent of the principal. The question of whether a duty of care exists is a question of law, which we review de novo. *Domagala v. Rolland,* 805 N.W.2d 14, 22 (Minn.2011); *Foss v. Kincade,* 766 N.W.2d 317, 320 (Minn.2009). Moreover, the existence of a duty of care is a threshold requirement. *Domagala,* 805 N.W.2d at 22.

### A.

RDI argues, and the district court agreed, that Integrity was vicariously liable for the conduct of the attorney Integrity appointed to represent RDI. The question of whether an attorney appointed to represent an insured to defend a claim is an agent for the insurer is one that has divided courts, and often turns on specific facts. *Compare Smoot v. State Farm Mut. Auto. Ins. Co.,* 299 F.2d 525, 530 (5th Cir.1962) (applying Georgia law and stating that "[t]hose whom the insurer selects to execute its promises, whether attorneys, physicians, no less than company-employed adjusters, are its agents for whom it has the customary legal liability"), *and Stumpf v. Cont'l Cas. Co.,* 102 Or.App. 302, 794 P.2d 1228, 1232 (1990) (holding insurer vicariously liable for defense counsel's negligent defense of a medical malpractice claim), *with Ingersoll–Rand Equip. Corp. v. Transp. Ins. Co.,* 963 F.Supp. 452, 454 (M.D.Pa.1997) (stating that an attorney's ethical obligations to the insured "prevent the insurer from exercising the degree of control necessary to justify the imposition of vicarious liability"), *and Lifestar Response of Ala., Inc. v. Admiral Ins. Co.,* 17 So.3d 200, 214–18 (Ala.2009) (imposing no vicarious liability for defense attorney's alleged negligence because insurer could not control attorney's professional judgment).

██ We conclude that RDI has failed to establish that the attorney appointed by Integrity had a duty to RDI to request a written explanation of the arbitration award. The duty of care the attorney owed to RDI was to represent it in the arbitration proceeding. The evidence shows that the attorney discharged that duty. RDI agrees that the attorney's representation did not extend to the coverage dispute with Integrity, and that the attorney had no duty of care to request a written explanation of the arbitration award. Moreover, RDI agrees that it has no claim against the attorney based on either his "failure" to obtain a written explanation of the arbitration award or his conduct of RDI's defense. Further, there is no allegation that the attorney refused a request from either RDI or Integrity to obtain a written explanation of the award. Because there is no claim that the attorney had a duty of care to request a written explanation of the award, or was otherwise

negligent, there is no liability that can be imputed to Integrity. Consequently, it is not necessary for us to determine whether an attorney appointed by an insurance company to represent an insured can be an agent of the insurance company, and therefore we decline to do so.

## B.

Having concluded that a portion of the homeowners' claim may be covered under the policy and that Integrity is not vicariously liable for the absence of an explanation of the arbitration award, we next examine whether Integrity is directly liable to RDI for the failure of the attorney it appointed to represent RDI to request an explanation of the arbitration award to determine what portion of the award, if any, was for the covered claim. Put differently, RDI argues that Integrity is directly responsible for the vague arbitration award and should therefore be required to indemnify it. We begin our analysis by looking to general principles of insurance law.

■ An insurer has a contractual duty to defend a covered claim brought against its insured when the insurer undertakes such a duty in the insurance policy. *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 415 (Minn.1997). A potential duty to defend a particular claim is triggered when the insured tenders notice of suit and opportunity to defend to the insurer. *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh,* 658 N.W.2d 522, 532–33 (Minn.2003). The existence of the duty to defend the claim is determined by comparing the language of the allegations in the underlying complaint to the relevant language in the insurance policy. *Haarstad v. Graff,* 517 N.W.2d 582, 584 (Minn. 1994); *see also Meadowbrook,* 559 N.W.2d at 418 n. 19. If any part of the suit "is arguably within the scope of coverage, the

insurer must defend"; only if the insurer proves that all claims in the suit are clearly outside coverage does it not have a duty to defend. *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1979).

■ When an insurer has a duty to defend a liability claim for which it questions coverage, the insurer must expressly inform its insured that it accepts defense of the claim subject to its right to later contest coverage of the claim based on facts developed at trial. *See Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822, 825–26 (Minn.1980); *see also Meadowbrook,* 559 N.W.2d at 417 & n. 15; *Faber v. Roelofs,* 311 Minn. 428, 433–34, 250 N.W.2d 817, 821 (1977); *Oehme v. Johnson,* 181 Minn. 138, 148–50, 231 N.W. 817, 820–21 (1930) (collecting cases). An insurer that fails to make such a reservation of rights is estopped from later denying coverage of the claim, up to the policy limits. *Faber,* 311 Minn. at 442–43, 250 N.W.2d at 825.

■ An insurer also has a duty to indemnify its insured by paying a covered claim under the insurance policy. *See Brooks Realty, Inc. v. Aetna Ins. Co.,* 276 Minn. 245, 252–54, 149 N.W.2d 494, 499–500 (1967). The holder of a liability insurance policy has a contractual right to payment—and an insurer the corresponding duty to indemnify the insured—when it is established that the insured's liability to a third party is within the scope of the insurance policy. *See, e.g., Short v. Dairyland Ins. Co.,* 334 N.W.2d 384, 387 (Minn.1983); *Crum v. Anchor Cas. Co.,* 264 Minn. 378, 390–91, 119 N.W.2d 703, 711–12 (1963). Specifically, an insurer has a duty to indemnify when its insured is found liable for a third-party claim within the terms of the liability insurance policy, but an insurer has no duty to indemnify when its insured is found liable for a third-party claim that is outside the policy's scope. *See*

*Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960) (stating that the extent of an insurer's liability is governed by the insurance policy). An award entered against the insured may include sums for which it is entitled to payment under the policy *and* sums for claims not covered by the policy, for which it has no right to payment and the insurer has no duty to indemnify. *See Prahm,* 277 N.W.2d at 391 & n. 2 (Minn.1979).

 The insured bears the initial burden of proving prima facie coverage of a third-party claim under a liability insurance policy. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.,* 718 N.W.2d 888, 894 (Minn.2006). If the insured meets its burden of establishing coverage of the claim, the burden shifts to the insurer to prove the applicability of an exclusion under the policy as an affirmative defense. *Id.; Boedigheimer v. Taylor,* 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970). To determine whether the parties have met their respective burdens, the court examines the language of the particular policy and the claim or claims actually proven by the third–party claimant in the liability action against the insured. *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 311 (Minn.1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.,* 766 N.W.2d 910, 919 (Minn.2009); *see also* 22 Britton D. Weimer, Clarance E. Hagglund & Andrew F. Whitman, *Minnesota Practice—Insurance Law & Practice* § 3:2 (2d ed.2010) (stating that determination of coverage requires analysis of "claims actually proven in the underlying trial, verdict and judgment").

 Previously, we have not had occasion to address whether an insurance company has a duty to disclose to its insured the availability of obtaining a written explanation of an arbitration award, and the appropriate remedy if it fails to do so.

But our existing law on the failure of the insurer to notify its insured that its defense of a claim is made under a reservation of rights is relevant and helpful. We have held that an insurer that defends an insured but provides no notice that the insurer reserves its right to contest coverage is estopped from later denying coverage under the insurance policy, even if it acted in good faith. *Faber,* 311 Minn. at 442–43, 250 N.W.2d at 825; *Oehme,* 181 Minn. at 151, 231 N.W. at 822. The consequence of an insurer's failure to reserve its rights arises not from its contractual duty to defend, if any, but from the equitable principle of estoppel. *Tozer v. Ocean Acc. & Guarantee Corp., Ltd.,* 94 Minn. 478, 483–84, 103 N.W. 509, 511 (1905). Specifically, an insurer's defense of a claim without a reservation of rights "tak[es] away the right of defense which the insured might make and his right to make or negotiate a settlement...." *Oehme,* 181 Minn. at 151, 231 N.W. at 822. We believe this estoppel rule is analogous to this situation.

 Other courts have held in similar circumstances that whenever an insurer has a duty to defend and is controlling the defense, the insurer has a duty to inform the insured of the insured's interest in obtaining an allocated award and the insured is "entitled to make the decision whether to seek an allocated [award]." *Duke v. Hoch,* 468 F.2d 973, 979 (5th Cir. 1972) (concluding that an insurer's reservation of its right to contest coverage was not sufficient to advise its insured of the insured's interest in an allocated verdict, and therefore the insured was relieved of the burden to prove allocation of the verdict unless the insurer could prove the verdict represented, in whole or in part, noncovered claims); *see also, e.g., Camden–Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.,* 224 W.Va. 228, 682 S.E.2d 566, 575–76 (2009) (holding that

"the insured's ordinary burden to allocate a verdict between covered and non-covered claims" does not shift to the insurer unless the insurer had an affirmative duty to defend the underlying claims); *Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.*, 550 F.Supp. 710, 716 (W.D.Okla. 1981) (applying *Duke* to the settlement context where insurer undertook the defense and had a right to control the litigation); *Buckley v. Orem*, 112 Idaho 117, 730 P.2d 1037, 1044–45 (Idaho Ct.App.1986) (adopting *Duke* and remanding for determination of whether insurer had disclosed the need for an allocated verdict to the insured's attorney, who had been provided by the insurer to the insured). Specifically, an insurer that fails to meet its duty to notify its insured of the insured's interest in obtaining an allocated award is prevented from "protect[ing] its interest and secur[ing] for itself an escape from responsibility at the expense of the insureds...." *Duke*, 468 F.2d at 979.

We conclude that when an insurer notifies its insured that it accepts the defense of an arbitration claim under a reservation of rights that includes covered and noncovered claims, the insurer not only has a duty to defend the claim, but also to disclose to its insured the insured's interest in obtaining a written explanation of the award that identifies the claims or theories of recovery actually proved and the portions of the award attributable to each. The duty we impose upon the insurer is conditioned upon the insured affirmatively showing that a written explanation of an award is available under applicable

rules, the insurer had the opportunity to provide timely notice to the insured of the insured's interest in a written explanation of the award, and prejudice was caused by the failure of the insurer to provide such notice. Prejudice in this context means the inability of the insured to obtain a written explanation of an arbitration award caused by conduct of the insurer.

Ordinarily, the insurer's disclosure should be made at or near the time the defense of the claim is accepted under a reservation of rights. When an insurer, however, fails to provide timely notice to the insured in this situation and the insured shows the conditions including prejudice to the insured are satisfied, then the insurer is estopped from claiming that the insured has the burden of proving allocation of the award. Instead, the burden shifts to the insurer to prove by a preponderance of the evidence that some part of the award is attributable to a noncovered claim. If the insurer meets this burden, both parties may present evidence and the district court must, as best it can, establish the allocation the arbitrator would have made if allocation had been requested.[4] Alternatively, when an insured receives timely notice of its interest in a written explanation of the arbitration award, the insured bears the burden of proving allocation of the award in subsequent litigation with its insurer over coverage.

Our decision to impose a duty to notify upon the insurer is supported by two reasons. First, like the estoppel rule in the reservation of rights context, the

4. The primary source of evidence will be the transcript of the arbitration proceeding and the evidence before the arbitrator, but if it is impossible for the district court to make a meaningful allocation based solely on the arbitration record, the parties should have the right to adduce additional evidence. We recognize that, under some circumstances, this will present an exceptionally difficult task. *See, e.g., Gay & Taylor*, 550 F.Supp. at 717 (making a "logical" apportionment of an unallocated settlement and acknowledging that the apportionment was "necessarily arbitrary"). Nevertheless, we are confident that district courts are up to the challenge.

rule prevents prejudice to the insured caused by the conduct attributable to the insurer. The insurer has a duty to exercise good faith toward its insured. *Short,* 334 N.W.2d at 387–88; *Larson v. Anchor Cas. Co.,* 249 Minn. 339, 349–50, 82 N.W.2d 376, 383 (1957). The insurer is in a unique position to know the scope of coverage and exclusions in its insurance policies. We acknowledge that the insured has more information regarding the claim against the insured. The obligation of the insurer to notify the insured should therefore be limited to the claim presented to it by its insured. Second, the duty to notify is not onerous. The burden to prove allocation of an arbitration award remains with the insured unless the insurer fails to make a timely disclosure of the insured's interest in obtaining a written explanation of the award and the insured affirmatively shows the conditions including prejudice in the ability to obtain a written explanation of the award caused by the conduct of the insurer, and that it would have sought such an award if it had the ability to do so.

█ We next turn to the record to determine whether Integrity timely notified RDI of its interest in obtaining a written explanation of the arbitration award and, if not, whether the insured satisfied the conditions including prejudice. The record reflects only that the homeowners commenced arbitration against RDI on July 14, 2006, that Integrity appointed an attorney to defend RDI on or before September 7, 2006, but that Integrity did not inform RDI of the availability of an arbitration award that addresses the coverage issues until January 10, 2007. The arbitration rules provide that a written explanation of the arbitration award was available as of right only if requested by both parties before the arbitrator was appointed on September 21, 2006. It is unclear whether the homeowners would have joined in the request for a written explanation of the award. We believe that the questions of whether Integrity's notice of the availability of a written explanation of the arbitration award was timely, and whether RDI satisfied the conditions including prejudice, require further development of the record in the district court. Consequently, we remand to the district court to determine whether timely notice was given and, if not, whether RDI satisfied the conditions including prejudice; and to determine whether the burden of proof regarding allocation of the award shifts to Integrity.

### III.

In summary, we conclude that the homeowners' negligent-construction (original house) claim presented in the arbitration proceeding satisfied the definition of an occurrence and was not excluded under the business-risk exclusions in the policy. Additionally, we conclude that RDI's vicarious-liability claim fails because it has failed to establish that the attorney appointed by Integrity to defend RDI against the homeowners' liability claims had a duty of care to obtain a written explanation of the arbitration award. Finally, we conclude that when Integrity elected to defend the homeowners' claims under a reservation of rights, Integrity had a duty to notify RDI of RDI's interest in an explanation of the arbitration award. If Integrity failed to notify RDI, and RDI is able to show prejudice resulting from the conduct of Integrity in failing to do so, then the burden shifts to Integrity to show that some part of the arbitration award is not covered under the policy. On this record, we are unable to determine whether Integrity fulfilled its duty to notify RDI, and therefore whether the burden of proof as to allocation remains with RDI.

Reversed and remanded.