STATE OF MINNESOTA

IN SUPREME COURT

A23-0519

Court of Appeals                                              Moore, III, J.
                                                    Took no part, Gaïtas, J.

Great Northwest Insurance Company,

                    Appellant/Cross-Respondent,

vs.                                                      Filed:  July 30, 2025
                                                    Office of Appellate Courts

Hector A. Campbell,

                    Respondent/Cross-Appellant,

Betty L. Campbell,

                    Defendant.

_____

Christopher A. Wills, RGP Law Ltd., Saint Cloud, Minnesota, for appellant/cross-respondent.

Edward E. Beckmann, Beckmann Law Firm, LLC, Bloomington, Minnesota; and

Thomas J. Okoneski, Okoneski Law Firm, LLC, North Saint Paul, Minnesota, for respondent/cross-appellant.

Dale O. Thornsjo, Lance D. Meyer, O'Meara Wagner, P.A., Minneapolis, Minnesota, for amicus curiae The Insurance Federation of Minnesota.

Timothy D. Johnson, Alexandra J. Anderson, Smith Jadin Johnson, PLLC, Bloomington, Minnesota, for amicus curiae United Policyholders.

Beth A. Jenson Prouty, Harrison E. Berg, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for amicus curiae American Property Casualty Insurance Association.

_____

1

1.      When roof shingles are damaged in a storm and, under applicable state code provisions for shingle installation, the shingles cannot be replaced without first installing a new layer of sheathing, Minnesota Statutes section 65A.10, subdivision 1 (2024)—which mandates that replacement cost insurance include the cost of replacing, rebuilding, or repairing damaged property in compliance with the minimum code requirements imposed by state or local authorities—requires a replacement cost insurer to cover the cost of installing the sheathing.

2.      Minnesota Statutes section 65A.10, subdivision 1, does not obligate an insurer to pay for overhead and profit costs unless the insured establishes that those costs constitute part of the "cost of replacing, rebuilding, or repairing any loss or damaged property in accordance with the minimum code as required by state or local authorities."

Affirmed.

_____

O P I N I O N

MOORE, III, Justice.

This appeal arises from a dispute over insurance coverage for storm-related roof repairs.  Respondent/cross-appellant Hector Campbell's home was insured under a replacement cost insurance policy provided by appellant/cross-respondent Great Northwest Insurance Company (Great Northwest).  After a hailstorm damaged the shingles on Campbell's roof, Campbell hired a contractor to conduct repairs.  While replacing the damaged shingles, the contractor discovered that the roof's decking had gaps between the

wood planks larger than permissible under state code governing the installation of the replacement shingles. The contractor installed a new layer of oriented strand board sheathing on top of the deficient decking and affixed the new shingles to the new sheathing. Because Campbell's insurance policy excluded coverage for roofing repairs beneath the outermost layer of roofing material, as well as coverage for overhead and profit in all cases except those involving fire and lightning, Great Northwest denied coverage for the contractor's installation of the new layer of sheathing material and for the contractor's overhead and profit.

Great Northwest brought a declaratory judgment action to determine its coverage obligations. The district court determined that the insurer's denial of coverage for the sheathing violated Minn. Stat. § 65A.10, subd. 1 (2024), which requires, in the event of a partial loss, replacement cost insurance to cover the cost of replacing or repairing the damaged portion of the property "in accordance with the minimum code as required by state or local authorities." But the district court granted summary judgment to Great Northwest on the overhead and profit issue, concluding that Campbell's policy "clearly and unambiguously" barred coverage for those costs. The district court thus granted Great Northwest's summary judgment motion in part and denied it in part. The court of appeals affirmed on both issues.

We conclude that Minnesota Statutes section 65A.10, subdivision 1, requires Great Northwest to provide coverage for the new sheathing because installing the sheathing was a cost of replacing the damaged shingles in accordance with the state building code governing shingle installation. Therefore, the limitation provision in Campbell's policy

3

that excluded such coverage is invalid under the statute. We further conclude that Great Northwest may deny coverage for overhead and profit here because Campbell failed to establish that the contractor's overhead and profit costs constitute part of the "cost of replacing, rebuilding, or repairing any loss or damaged property in accordance with the minimum code as required by state or local authorities." Minn. Stat. § 65A.10, subd. 1. Campbell therefore failed to show that the provision excluding coverage for overhead and profit violates section 65A.10. Accordingly, we affirm the decision of the court of appeals.

## FACTS

The facts here are undisputed. A hailstorm damaged the roof of Campbell's Saint Paul home in May 2022.[1] The home was insured under a homeowner's replacement cost insurance policy issued by Great Northwest. After an adjuster confirmed the damage, Great Northwest approved the removal and replacement of the damaged shingles.

Campbell hired a contractor to replace the damaged shingles. When the contractor removed the damaged shingles, the contractor discovered that Campbell's roof decking (the layer of wood to which the shingles were affixed) had gaps exceeding one-fourth of an inch. These gaps were significant because the shingle manufacturer's installation instructions—which roofing installers must follow under the state building code[2]—

---

[1]    Hector Campbell and his wife, defendant Betty Campbell, owned the home at the time of the storm. Mrs. Campbell has since passed away.

[2]    For its building code, Minnesota has incorporated by reference the 2018 International Building and Residential Codes. *See* Minn. R. 1305.0011, subp. 1 (2020) (adopting the international building code); Minn. R. 1309.0010, subp. 1 (2020) (adopting the international residential code). The term "state building code" in this opinion therefore

4

prohibited installing the shingles on decking with gaps greater than one-eighth of an inch. As a result, the state code did not allow the contractor to install the replacement shingles directly on Campbell's existing roof decking. The contractor therefore installed oriented strand board sheathing over the existing decking and affixed the new shingles to the new sheathing. When the contractor submitted an invoice to Great Northwest for the roof repairs, Great Northwest denied coverage for three costs: $5,600 for the installation of the oriented strand board sheathing, $2,641 for the contractor's overhead, and $2,641 for the contractor's profit.

Great Northwest brought a declaratory judgment action in Ramsey County District Court, seeking to determine its coverage obligations under Minnesota law. Great Northwest moved for summary judgment, arguing that two provisions in Campbell's insurance policy explicitly disclaimed coverage for these costs. First, Great Northwest cited to a "Roof Damage Limitation Endorsement" in Campbell's policy, which stated that Great Northwest would only pay for "direct physical loss" and not for "any layer of roofing material . . . beneath the outermost layer." This endorsement stated:

> There is no coverage for and "we" will not pay for tear off, repair, removal, or replacement of any layer of roofing material, including "decking", beneath the outermost layer. This limitation applies even if the tear off, repair, removal, or replacement of any layer of roofing material beneath the outermost layer or "decking" is necessary to repair, remove, or replace the

refers to the 2018 International Building Code and the 2018 International Residential Code, subject to the exceptions, amendments, and qualifications to those codes as stated in the administrative rules. *See generally* Minn. R. chs. 1305, 1309 (2020) (adopting certain amended provisions of the International Building and Residential Codes). Chapter 9 of the International Residential Code addresses "roof assemblies." Int'l Residential Code §§ R901 to R908 (Int'l Code Council 2018); *see also* Minn. Rs. 1309.0903, .0905 (2020) (adopting amended sections of R903 and R905 of the Int'l Residential Code).

outermost layer of roofing material. This limitation also applies even if the tear off, repair, removal, or replacement of any layer of roof material, including "decking", other than the outermost layer, is required by any law or ordinance, including any building code.

"We" do pay for direct physical loss to "decking" below all layers of roof material, if a covered peril causes the direct physical loss to the "decking" and the loss is not subject to any exclusions in the policy.

The roofing endorsement defined "decking" as "the wood, plywood, wood fiber, or other material applied to the structure of a building or other structure and to which a roof assembly is attached." Because the gaps in the decking were not caused directly by the storm, Great Northwest argued that this endorsement excluded coverage for installation of the new sheathing.

Second, Great Northwest pointed to an "Overhead and Profit" Endorsement in Campbell's policy, which excluded coverage for "[o]verhead and profit on the materials and labor associated with roofing or the roofing system" unless the damage was caused by fire or lightning. The damage to Campbell's roof was not due to fire or lightning, and therefore, Great Northwest argued it had no obligation to provide coverage for the contractor's overhead and profit.

Campbell countered that section 65A.10—which requires replacement cost insurance to cover, in the case of a partial loss, the "cost of replacing, rebuilding, or repairing" the damaged portion of the property "in accordance with the minimum code as required by state or local authorities"—encompassed both the sheathing cost and the overhead and profit costs. Minn. Stat. § 65A.10, subd. 1. Therefore, Campbell argued, the two policy endorsements were invalid because they conflicted with the statute.

6

The district court granted in part and denied in part Great Northwest's motion for summary judgment. The district court denied summary judgment as to the cost of the sheathing, concluding that Great Northwest's denial of coverage violates Minn. Stat. § 65A.10, subd. 1. The district court thus ordered Great Northwest to pay the $5,600 related to the roof decking. But the district court granted summary judgment to Great Northwest as to the contractor's overhead and profit. Great Northwest appealed on the overhead and profit issue, and Campbell appealed on the sheathing issue. The court of appeals affirmed the district court, *Great Nw. Ins. Co. v. Campbell*, 3 N.W.3d 59 (Minn. App. 2024), and we granted review on both issues.

**ANALYSIS**

The question before us is whether Minn. Stat. § 65A.10, subd. 1, requires Great Northwest to provide coverage for the cost of installing new sheathing over the existing decking on Campbell's roof, as well as the contractor's associated overhead and profit. Campbell argues that the statute requires coverage for these costs, such that the endorsements in Campbell's insurance policy disclaiming coverage for those costs are unenforceable.

This case comes to us on appeal from summary judgment. Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. On appeal, we determine whether there are any genuine issues of material fact that preclude summary judgment and whether the district court properly applied the law. *St. Matthews Church of God & Christ v. State Farm Fire & Casualty Co.*, 981 N.W.2d 760, 764 (Minn. 2022). We review a

7

district court's summary judgment decision de novo. *Id.* The parties agree that the material facts are not in dispute. Therefore, the only questions before us are the interpretation of statutes and insurance contracts, which are questions of law we review de novo. *Id.*

"Insurance policies are contracts and, absent statutory provisions to the contrary, general principles of contract law apply." *Remodeling Dimensions v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 611 (Minn. 2012). But "[t]he business of insurance is quasi public in character; hence, it is competent for the state, in the exercise of the police power, to regulate it for the protection of the public." *Ill. Farmers Ins. Co. v. Glass Service Co.*, 683 N.W.2d 792, 802 (Minn. 2004) (citation omitted) (internal quotation marks omitted). Thus, when a term in an insurance contract contravenes a requirement of Minnesota statute, the contract term is unenforceable. *Streich v. Am. Fam. Mut. Ins. Co.*, 358 N.W.2d 396, 399 (Minn. 1984).

The Roof Damage Limitation and Overhead and Profit endorsements in Campbell's insurance policy explicitly bar coverage for the sheathing and overhead and profit on these facts.[3] We therefore must decide whether the statute governing replacement cost insurance, Minnesota Statutes section 65A.10, subdivision 1, renders the two insurance provisions at issue—the endorsements covering roof damage and overhead and profit—invalid.

---

[3] Campbell argues that these facts did not trigger the coverage exclusion within the Roof Damage Limitation Endorsement. That said, the court of appeals concluded here that coverage for the sheathing installation was excluded under the plain language of the endorsement, *Campbell*, 3 N.W.3d at 65, and Campbell did not preserve this question in his petition for review. Therefore, Campbell forfeited the issue, and we adopt the court of appeals' holding that the insurance policy itself disclaimed coverage for the sheathing. *See In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005) (stating the presumption that "we do not address issues that were not raised in a petition for review").

I.

We begin with the question of whether Minnesota Statutes section 65A.10, subdivision 1, obligates an insurer offering replacement cost insurance to indemnify an insured for the cost of installing new roof sheathing, where such sheathing is necessary to allow damaged shingles to be replaced in compliance with applicable building codes governing shingle installation. *See Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012) ("An insurer . . . has a duty to indemnify its insured by paying a covered claim under the insurance policy."). If the statute were to require such coverage, the Roof Damage Limitation Endorsement would be invalid. *Streich*, 358 N.W.2d at 399 ("An insurer's liability is governed by the contract between the parties only as long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes.").

Section 65A.10, subdivision 1, which addresses mandated code-compliant coverage for a partial loss, provides:

> Subject to any applicable policy limits, where an insurer offers replacement cost insurance: (i) the insurance must cover the cost of replacing, rebuilding, or repairing any loss or damaged property in accordance with the minimum code as required by state or local authorities . . . . In the case of a partial loss, unless more extensive coverage is otherwise specified in the policy, this coverage applies only to the damaged portion of the property.

In this case, the court of appeals concluded that section 65A.10, subdivision 1, requires Great Northwest to cover the cost of installing the new sheathing. *Campbell*, 3 N.W.3d at 67. The court of appeals concluded that "the damaged portion of Campbell's property" was the shingles, not any other layer of the roof. *Id.* But it concluded that replacing the

9

sheathing was a cost of replacing the damaged shingles under the statute, making coverage mandatory. *Id.* at 65–66. The court of appeals reasoned that "it was not possible for a roofer to install new shingles in accordance with the state building code" unless the new sheathing was installed. *Id.* at 67. Therefore, installing new sheathing was a "cost of replacing, rebuilding, or repairing any loss or damaged property in accordance with the minimum code as required by state or local authorities." Minn. Stat. 65A.10, subd. 1.

Great Northwest argues that coverage is not required under section 65A.10, subdivision 1, relying heavily on our recent decision in *St. Matthews*, 981 N.W.2d 760, which also involved the scope of an insurer's obligation under the partial-loss provision in section 65A.10. In *St. Matthews*, we concluded that the phrase "the damaged portion of the property" in section 65A.10 is subject to only one reasonable interpretation and held that in the event of a partial loss, the insurer's "obligation to bring the property up to code does not extend beyond that portion of the property that was damaged in the covered event." *St. Matthews*, 981 N.W.2d at 765.

*St. Matthews* involved a Saint Paul church damaged during a hailstorm. *Id.* at 762. The church's property insurer, State Farm Fire and Casualty Company, agreed to cover the cost of repairing and replacing drywall in the church, which had sustained storm damage. *Id.* at 763. But when the drywall was removed, cracks in the masonry behind the damaged drywall were discovered. *Id.* The City of Saint Paul would not issue a building permit for the repair and replacement of the drywall until the cracked masonry was repaired, explaining that the cracks in the masonry impacted the structural integrity of the wall and created a "hazardous condition." *Id.* The city thus required the church to bring the masonry

10

into accordance with the city's building code requirement as a condition of obtaining a building permit. *Id.* The church asked us to hold that State Farm was required to pay to repair the masonry as a covered cost of repairing the "damaged portion of the property" under section 65A.10. State Farm maintained that it could deny coverage because any issues with the masonry were "unrelated to the storm event." *St. Matthews*, 981 N.W.2d at 763 (internal quotation marks omitted).

We held that because the masonry was not "the damaged portion of the property," section 65A.10 did not require coverage. *St. Matthews*, 981 N.W.2d at 768. We stated that there was "no dispute that State Farm fully covered the cost of replacing the drywall consistent with any municipal codes related to the drywall," and that "there is nothing in the record to suggest that St. Matthews could not have installed the drywall without any additional repairs to the masonry." *Id.* at 766–67. Therefore, repairs to the masonry were not covered under section 65A.10. *Id.* at 768.

The parties dispute whether this case is controlled by our decision in *St. Matthews*. Great Northwest argues that this case is directly analogous to *St. Matthews*. It argues that because no other roof layer besides the shingles was damaged in the storm, and because "the shingles can be completely replaced in compliance with the municipal code without making any additional changes to other parts of the property," section 65A.10 does not mandate coverage.

Campbell responds that this case is distinguishable. Campbell notes that in *St. Matthews*, we observed that "from the perspective of a drywall installer, there was nothing in the condition of the masonry that prevented the installation of new drywall."

11

981 N.W.2d at 767. Campbell asserts that here, from the perspective of a shingle installer, the damaged shingles could not be replaced in compliance with the code governing the shingles without first installing a new sheathing surface. Campbell thus argues that while the masonry repairs from *St. Matthews* were not within the scope of section 65A.10, a code-compliant shingle surface is covered by the statute here.

We agree with Campbell. In the event of a partial loss, an insurer's obligation under section 65A.10, subdivision 1, is limited to "bringing up to code that 'portion of the property' that was damaged." *St. Matthews*, 981 N.W.2d at 765 (quoting Minn. Stat. § 65A.10, subd. 1). Here, we agree with the court of appeals that the damaged portion of the property was the shingles alone—not the decking.[4] But critically, the state building code governing shingle installation incorporates the instructions set forth by the shingle manufacturer, which state that the replacement shingles could be installed only on a roofing layer with gaps smaller than one-eighth of an inch. Great Northwest does not dispute that the state building code imposed such a requirement. Nor does Great Northwest dispute that Campbell's home lacked such a surface. Thus, because the code governing the damaged property required the installation of new sheathing, we conclude coverage is required by section 65A.10, subdivision 1.

Our reasoning here aligns with *St. Matthews*. In that case, "there was nothing in the

---

[4]     Campbell argues that we should conclude that the shingles and the other layers of roofing together comprise one "damaged portion of the property"—"the roof." But we rejected this reasoning in *St. Matthews*. Just as the drywall and the masonry were not one "portion" of the building in that case—"the wall"—the shingles and the decking are not one "portion" of the building here. *See St. Matthews*, 981 N.W.2d at 766–67.

condition of the masonry that prevented the installation of new drywall." *St. Matthews*, 981 N.W.2d at 767. But here, the contractor could not have complied with state code governing the shingles without installing new sheathing. And similarly, in *St. Matthews*, "State Farm fully covered the cost of replacing the drywall consistent with any municipal codes related to the drywall." *Id.* at 766. In this case, Great Northwest's failure to cover the cost of installing a new sheathing surface means that they failed to "fully cover[] the cost of replacing the [shingles] consistent with any municipal codes related to the [shingles]." *Id.*

We therefore conclude that section 65A.10, subdivision 1, requires Great Northwest to cover the cost of installing the new sheathing, because the sheathing cost was a "cost of replacing [the damaged shingles] in accordance with the minimum code." We thus affirm the court of appeals' decision affirming the grant of summary judgment to Campbell on the sheathing issue.

## II.

We now turn to the overhead and profit issue. Campbell argues that section 65A.10, subdivision 1, requires Great Northwest to cover the contractor's overhead and profit related to the roofing repairs, even though the Great Northwest policy explicitly excluded coverage for overhead and profit except in cases involving fire or lightning.

The "Overhead and Profit" endorsement in Campbell's policy issued by Great Northwest provided:

> Overhead and profit on the materials and labor associated with roofing or the roofing system will not be covered under this policy unless the damage to the roof or roof system is a result of fire or lightning.

13

The bill from Campbell's roofing contractor included line items for overhead and profit—each in the amount of $2,641, for a total of $5,282. Campbell argues that the policy endorsement limiting recovery of overhead and profit costs to certain cases is unenforceable. Campbell asserts that overhead and profit are generally recognized in the industry as necessary components of work performed by a general contractor, and that therefore, they fall within the scope of the replacement cost coverage required by section 65A.10. Great Northwest responds that Campbell "did not offer any evidence" that the contractor's overhead and profit here "were caused by a code compliance issue," and that Campbell therefore failed to demonstrate that coverage for overhead and profit is required under the statute. The court of appeals affirmed the district court's decision granting summary judgment for Great Northwest, concluding that Campbell had not met his burden of demonstrating that the district court erred—because Campbell "does not explain how the statutory language supports his argument," and because "Campbell provides no authority to support his argument." *Campbell*, 3 N.W.3d at 67.

The "burden of showing error rests upon the one who relies upon it." *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975). The district court concluded in this case that Great Northwest "has no legal obligation to pay" the overhead and profit costs. Here, Campbell has cited no code provision—and indeed, no legal authority—to support his argument that overhead and profit were a "cost of repairing" Campbell's damaged property "in accordance with the minimum code as required by state or local authorities," and thus required under section 65A.10, subdivision 1. Campbell's

14

assertion that overhead and profit are a generally accepted cost of certain construction projects is not enough to mandate coverage under the statute. Section 65A.10, subdivision 1, requires insurers to provide coverage only for costs that are necessary to conduct repairs in accordance with code requirements, and Campbell does not provide any authority requiring the use of a general contractor, and their accompanying overhead and profit costs, for these repairs. Because the district court found for Great Northwest on this question, and because Campbell has failed to present any grounds upon which the judgment of the district court can be reversed, we affirm the court of appeals' decision affirming the grant of summary judgment to Great Northwest on the overhead and profit issue.

*     *     *

Under Minnesota Statutes section 65A.10, subdivision 1, replacement cost insurance must cover "the cost of replacing, rebuilding, or repairing any loss or damaged property in accordance with the minimum code as required by state or local authorities." In the event of a partial loss, that obligation only extends to the "damaged portion" of the home. *Id.* Today we clarify that section 65A.10, subdivision 1, requires insurers to cover the cost of all repairs necessary to ensure that the damaged portion of the property can be repaired, replaced, or rebuilt in compliance with the state or local code that governs the damaged portion of the property. We therefore affirm the decision of the court of appeals holding that Great Northwest must cover the cost of installing new sheathing to which replacement shingles can be affixed in compliance with state code. We also affirm the decision of the court of appeals affirming the grant of summary judgment to Great Northwest on the question of overhead and profit, because Campbell has failed to

15

demonstrate that overhead and profit were a required cost within the scope of the statute.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


GAÏTAS, J. took no part in the consideration or decision of this case.