*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1574**

State Farm Fire and Casualty Company,
Respondent,

vs.

Joseph Otten, et al.,
Defendants,

Paul Braun,
Appellant.

**Filed May 23, 2016
Affirmed
Smith, Tracy, Judge**

Sherburne County District Court
File No. 71-CV-14-585

Scott G. Williams, Kyle P. Dareff, HKM, P.A., St. Paul, Minnesota (for respondent)

Michael B. Healy, Michael Healy Law, LLC, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY**, Judge

        Appellant Paul Braun appeals from the district court's grant of summary judgment

to respondent State Farm Fire and Casualty Company, arguing that the district court erred

as a matter of law by determining that State Farm had no duty to indemnify its insureds

against Braun's wrongful-eviction claim. Because the insurance policy does not cover the insureds' intentional acts resulting in intended harm, and because the undisputed facts establish that there is no coverage here, we affirm.

**FACTS**

Joseph and Kristen Otten and T.E.O. Properties, Inc. own a rental home insured under a Rental Dwelling Policy issued by State Farm. The policy provides business-liability coverage as follows:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, *caused by an occurrence,* and which arises from the ownership, maintenance, or use of the insured premises, we will:
>     1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>     2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

(Emphasis added.) The policy defines "occurrence" as "an accident, including exposure to conditions" that results in (1) bodily injury; (2) property damage; or (3) personal injury. "Personal injury" under the policy means injury arising out of any of a number of listed "offenses," including "wrongful eviction."

The policy also contains an intentional-acts exclusion, which excludes coverage for:

> a. bodily injury, personal injury, or property damage:
>     (1) which is either expected or intended by an insured; or
>     (2) to any person or property which is the result of willful and malicious acts of an insured;

2

> b. bodily injury, personal injury, or property damage arising out of the rendering or failing to render professional services . . . .

In addition, the policy contains a separate exclusion related to mold.

In May 2011, Braun and his then wife entered a lease agreement to rent the home from June 1, 2011 to May 31, 2012. Before entering the lease, the Brauns inquired about the presence of mold in the home because Braun's stepdaughter had respiratory problems. The Ottens said they were unaware of any mold.

On May 16, 2012, a toilet malfunctioned in the home, causing water to flood the bathroom floor. When Joseph Otten visited the home to perform repairs, Braun asked him to have the home inspected for mold. According to Braun, Joseph Otten then revealed that the home had mold when he purchased it. Joseph Otten refused to have the home inspected and asked the Brauns to move out.

On May 18, 2012, the Ottens gave the Brauns a letter titled "Notice to end lease," stating: "The rental agreement ends May 31, 2012 12:00 noon. You must be moved out by that time. An unlawful detainer will be filed if this is not met." The Brauns vacated the home on May 31.

Braun sued the Ottens and T.E.O., alleging several claims, including wrongful eviction. The parties in Braun's lawsuit entered a *Miller-Shugart* agreement[1] in which the

---

[1] When the insurer does not "wholeheartedly defend the insured," the insured may enter a *Miller-Shugart* agreement with the claimant in which the claimant agrees only to "sue for the insurance proceeds to enforce the settlement." *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 325 & n.2 (Minn. 1993); *see Miller v. Shugart*, 316 N.W.2d 729, 733-36 (Minn. 1982).

Ottens and T.E.O. agreed there was a substantial likelihood they would be found liable and (1) consented to pay $500 on Braun's fraudulent-inducement claim and all issues related to mold and (2) consented to a $35,892 judgment on Braun's breach-of-contract and wrongful-eviction claims. Braun agreed not to collect the judgment from the Ottens and T.E.O. but only to "seek to satisfy this judgment from State Farm." The district court entered judgment for Braun against the Ottens and T.E.O. in the amount of $35,892.

In discovery, the Ottens admitted that the lease agreement required them to provide 30 days' notice before evicting the Brauns and that they "were aware of the lease's notice provisions but felt the circumstances warranted the May 18th notice." Kristen Otten testified in a deposition that she knew of the 30-day notice requirement but decided to give the Brauns less than 30 days' notice due to the circumstances. She further testified that the Ottens knew that the Brauns would incur costs associated with moving and finding a new place to live.

State Farm sued the Ottens, the Brauns, and T.E.O., seeking a declaratory judgment that it had no duty to indemnify the Ottens and T.E.O. It also moved for summary judgment. Following a hearing, the district court granted summary judgment to State Farm and declared that State Farm had no obligation to indemnify the Ottens and T.E.O. in Braun's lawsuit. The district court found that Braun's "non-mold-related breach of contract or wrongful eviction" claims were excluded from insurance coverage because the Ottens acted intentionally and that Braun's mold-related claims were excluded under the separate mold exclusion.

Braun appeals.

4

## D E C I S I O N

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo to determine if there are any issues of material fact and whether the district court erred in applying the law. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). "In doing so, we view the evidence in the light most favorable to the nonmoving party." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 610 (Minn. 2012).

"Generally, the extent of an insurer's liability is determined by its insurance contract with its insured." *Hanbury v. Am. Family Mut. Ins. Co*., 865 N.W.2d 83, 86 (Minn. App. 2015), *review denied* (Minn. Aug. 25, 2015). We review de novo the interpretation of an insurance policy and its application to the facts of the case. *Remodeling Dimensions, Inc.*, 819 N.W.2d at 610. "Insurance policies are contracts and, absent statutory provisions to the contrary, general principles of contract law apply." *Id.* at 611. "When the language of a contract is clear and unambiguous, we enforce the agreement of the parties as expressed in the contract." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). The insured has the initial burden of demonstrating coverage. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). The insurer bears the burden to show that a coverage exclusion applies. *Bob Useldinger & Sons, Inc.*, 505 N.W.2d at 327.

The district court concluded both that coverage was not triggered because there was no "occurrence" and that, even if coverage had been triggered, the intentional-acts exclusion applied because the injuries were expected or intended. Braun argues that as a matter of law the policy must be interpreted to cover the wrongful-eviction claim here. In the alternative, Braun argues that there is a genuine issue of material fact as to whether the injuries were "expected or intended" and therefore as to whether the exclusion applies.[2]

1.

We first address Braun's argument regarding interpretation of the insurance policy. Braun argues that the policy is ambiguous because it both provides coverage for the intentional act of wrongful eviction and excludes coverage for the insured's intentional acts, and that the policy therefore should be construed in favor of coverage. We disagree.

Braun is correct that the insurance policy generally contemplates coverage for wrongful eviction. The policy generally provides coverage for "personal injury," including injury arising from a "wrongful eviction." The policy, however, provides coverage for personal injury only if the injury is "caused by an occurrence." An "occurrence" is defined as an "accident." While "accident" is not defined by the policy, our supreme court has defined "accident" as it appears in an insurance policy to mean "an unexpected, unforeseen, or undesigned happening or consequence." *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 608 (Minn. 2001) (quotation omitted). The policy also contains an intentional-acts

_____

[2] On appeal, Braun challenges the district court's interpretation of the insurance policy as it relates to his wrongful-eviction claim only. He makes no argument regarding his breach-of-contract claim.

6

exclusion, which excludes from coverage claims for "personal injury" when the injury is "expected or intended" by the insured. The plain and unambiguous language of the "occurrence" requirement and the intentional-acts exclusion requires a wrongful eviction to be accidental and the resulting injury to be unintended for coverage to apply.

Contrary to Braun's argument, this conclusion does not defeat coverage for all wrongful-eviction claims. The insurance policy does not define "wrongful eviction." Black's Law Dictionary defines a "wrongful-eviction action" as "[a] lawsuit brought by a former tenant . . . against one who has put the plaintiff out of possession, alleging that the eviction was illegal." *Black's Law Dictionary* 1752 (9th ed. 2009). In addition, it defines "wrongful" as "[c]haracterized by unfairness or injustice" or "[c]ontrary to law." *Id.* at 1751. Neither of these definitions requires intent. As State Farm argues, it is possible for a landlord to accidentally dispossess the wrong tenant or to make another mistake that unintentionally results in a wrongful eviction and, in such a case, coverage would apply. Because a "wrongful eviction" may or may not be intentional, the insurance policy does not both cover and exclude the same wrongful-eviction claim.

We conclude that the district court did not err by interpreting the insurance policy to provide coverage only for accidental wrongful evictions where injury is not expected or intended.

2.

We turn next to Braun's argument that, even under this reading of the insurance policy, summary judgment was erroneous because a genuine issue of material fact remains

7

regarding whether the Ottens acted intentionally. The district court concluded that "the Ottens' actions were not accidental, but were intended as a matter of law."

"The questions of whether an injury is the result of an accident and whether coverage is excluded because the injury is the result of an intentional act are for all practical purposes, identical issues." *State Farm Fire & Cas. Co. v. Schwich*, 749 N.W.2d 108, 112 (Minn. App. 2008) (quotation omitted). As in *Schwich*, the policy here "excludes coverage when the insured acts with specific intent to cause injury." *See id.* Such an intentional-acts exclusion applies when the insured acts "with specific intent to cause harm" and intends not just to act, but "intend[s] the harm itself." *Walser*, 628 N.W.2d at 611 (quotations omitted).

Braun argues that the Ottens lacked the required intent because, at the time of the eviction notice, they believed that they had provided sufficient notice. In making this argument, Braun cites to portions of Joseph Otten's deposition testimony that are not in the record, and we can find no evidence in the record to support Braun's assertion. To the contrary, the record includes a portion of Kristen Otten's deposition in which she stated that she knew the Ottens were required to provide 30 days' notice but decided to give the Brauns less than 30 days' notice due to the circumstances. The record also contains the Ottens' admission that the lease required 30 days' notice and that they "were aware of the lease's notice provisions but felt the circumstances warranted the May 18th notice." On May 18, 2012, the Ottens provided notice to the Brauns to vacate the home by May 31, just 13 days later. The record shows no genuine issue of material fact that the Ottens intentionally provided inadequate notice to the Brauns.

Braun also argues that the Ottens lacked the required intent to cause harm because they did not know that the Brauns would suffer financial losses from the wrongful eviction and did not intend the specific injuries Braun suffered from the eviction. But the Ottens did not have to intend to cause Braun the specific harm he suffered. *See Walser*, 628 N.W.2d at 611 ("[T]o find that an insured acted intentionally, a court need only find that the insured intended some harm, not that the insured intended the specific harm that resulted."). In her deposition, Kristen Otten testified that the Ottens knew that the Brauns would incur costs associated with moving and finding a new place to live. This undisputed evidence supports the conclusion that the Ottens intended "some harm." *See id.*

Because there is no genuine issue of material fact that the Ottens knew that the notice given was inadequate and that the Brauns would suffer financial losses, the district court properly concluded that the insurance policy does not cover the Ottens' intentional and wrongful eviction of the Brauns as a matter of law. *See Schwich*, 749 N.W.2d at 112 (defining "accident" as "an unexpected, unforeseen, or undesigned happening or consequence" and "intentional conduct" as requiring "a specific intent to cause injury" (quotations omitted)). State Farm therefore was not required to indemnify the Ottens, and the district court did not err by granting summary judgment to State Farm. We need not consider State Farm's alternative argument that the mold exclusion would also bar coverage for Braun's claim.

**Affirmed.**